**STATE of Maine**

v.

**Elery BEALE.**

Supreme Judicial Court of Maine.

Feb. 5, 1973.

Donald H. Marden, Asst. County Atty., Augusta, for plaintiff.

Lipman & Gingras by Sumner H. Lipman, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

The Defendant, who operates an antique shop in Hallowell, was convicted under 17 M.R.S.A. § 3551 of the offense of knowingly concealing stolen property. His appeal presents us for the first time with the opportunity to construe the phrase "knowing it to be stolen" found in this statute.

One Saturday during the summer of 1971, when the Defendant was absent and his store was in Mrs. Beale's care, a prospective customer, a Mrs. Johnson, noticed that some of the displayed merchandise looked familiar. On examining it further she became convinced that several items were in fact pieces of silverware and glass which had been stolen from her several months earlier.

She left and returned after a short interval with a Hallowell police officer. She then pointed out to Mrs. Beale the items which she believed to have been stolen from her. The officer told Mrs. Beale that these items were "possibly stolen" and that they should be placed aside and not displayed or sold. She then gathered these items and put them on a shelf. The officer testified that he told Mrs. Beale to tell her husband to "contact me as soon as he got back". He later testified that he said that she "would be contacted, probably, later on that day".

There was no further contact between the Beales and the police during the weekend. The following Monday morning the investigation was apparently taken over by a deputy sheriff from the county where the theft had occurred. When he called at Defendant's store Defendant informed him that he had put the articles back in the counter for sale Sunday morning and that he had sold many of these items that day

in spite of knowing that the police officer had requested that they be withdrawn from sale. Among those which the Defendant said he had sold were all the articles which bore the distinctive initials by which the owner had identified them as hers.

The Defendant testified that he had purchased these items at different times from people whom he considered to be reliable, that he had receipts for many of them and that he was entitled to sell them regardless of the officer's warning. The only testimony as to the details of the complaint by Mrs. Johnson and the officer's admonitions to Mrs. Beale which were in fact related to Mr. Beale was given by Mrs. Beale (called by the State) and the Defendant himself. The Defendant and Mrs. Beale testified that Mrs. Beale told the Defendant that Mrs. Johnson claimed that these items had been stolen from her home, and that the officer had asked Mrs. Beale to put the items aside saying that he would be back later.

The statute creating this offense—17 M. R.S.A. § 3551—reads, in pertinent part:

"Whoever buys, receives or aids in concealing stolen property, knowing it to be stolen, shall be punished . . .".

At the close of the testimony, Defendant's counsel made several timely requests for instructions. One of them, number 3, was not given and the issue raised by it, together with counsel's related objection, prove decisive of this appeal. It reads:

"(3) The fact that the Defendant was notified that the goods were stolen after they had been purchased and received and yet went ahead and sold them does not of itself make him guilty of the crime charged, if the Defendant in truth believed that he had a valid receipt for the goods and that he had lawful possession of them."

Following the Justice's charge, the Defendant's counsel noted the following objections:

"MR. LIPMAN: The Defendant wishes to put on the following exceptions to the Court's charge: Its denial of Defendant's requested instruction No. 3, and further, that the Court defined 'knowing' as that which should lead a reasonable prudent man to believe it was stolen; that a reasonably prudent man believed or would believe that the goods were stolen. The test is whether the Defendant knew that the Defendant had a reason to believe that the property was stolen, did the Defendant do as a reasonable prudent man would have done? Further, did the Defendant act as a prudent person, further, did the Defendant conduct himself as an ordinary prudent person? It being the Defendant's contention that the test is whether the Defendant, if he did in fact know, not whether he acted or should have acted as a reasonable prudent person would have acted."

The jury found the Defendant guilty.

Although the Defendant's requested instruction failed to focus clearly upon the issue, his objection to the Justice's charge adequately presents the issue for our review. The issue is one of statutory interpretation of the words "knowing it to be stolen". Did the Legislature intend that the jury be satisfied as to the knowledge of the Defendant by testing it subjectively or objectively? To put it another way, must the State satisfy the jury that the Defendant himself actually had knowledge that the goods were stolen or is it enough that a reasonable person, with the information that was available to the Defendant, would have known that the goods were stolen?

We find a split of authority among the jurisdictions which have had the occasion to examine this issue, with the majority requiring that the State's proof should meet the subjective test. 45 Am.Jur., Receiving Stolen Property, § 8; 76 C.J.S. Receiving Stolen Goods § 8. A representative summary of the reasoning of the majority is found in the language of Von Sprecken v.

State, 70 Ga.App. 222, 225, 28 S.E.2d 341, 343 (1943):

" . . . The gist of the offense is the actual state of the *defendant's* mind . . . and not what, under like circumstances, might be the state of mind of some other person . . . ". (Emphasis added.)

The Massachusetts Supreme Judicial Court took a similar position in reversing a conviction for receiving stolen property which was based upon a finding of knowledge under the reasonable man standard, saying:

" . . . The infraction of this statute is not proved by negligence nor by failure to exercise as much intelligence as the ordinarily prudent man. The statute does not punish one too dull to realize that the goods which he bought honestly and in good faith had been stolen.

. . . . . .

The knowledge or belief of the defendant must be personal to him and our statute furnishes no substitute or equivalent." Commonwealth v. Boris, 317 Mass. 309, 58 N.E.2d 8, 12 (1944).

The issue has also been before the Vermont Supreme Court. The Vermont statute did not define the offense of receiving stolen goods and the Court found that the elements were those defined by the common law. The Court rejected the State's contention that reasonable notice was sufficient to supply the common law requirement of knowledge that the goods were in fact stolen. The Court said:

"If he did not have actual or positive knowledge, the question is whether from the circumstances he—not some other person—believed they had been stolen. The circumstances must have that effect upon his mind, to constitute knowledge by him." State v. Alpert, 88 Vt. 191, 92 A. 32, 37 (1914).

A minority of jurisdictions apply the so-called objective test as to knowledge, being impressed, perhaps, by the difficulties of proof as to the actual state of a defendant's mind. The position of these courts appears to be represented by the statement of the Mississippi Court in Pettus v. State, 200 Miss. 397, 410, 27 So.2d 536, 540 (1946) —a position recently reaffirmed by that Court in Bennett v. State, Miss., 211 So.2d 520, 526 (1968):

"[T]he word, 'knowing': in its relation to receiving stolen goods means that, if a person has information from facts and circumstances which should convince him that property had been stolen, or which would lead a reasonable man to believe that property had been stolen, then in a legal sense he knew it."

See also State v. Rockett, 6 Wash.App. 399, 493 P.2d 321 (1972); McGlothlin v. State, 1 Md.App. 256, 229 A.2d 428, 429 (1967).[1]

We consider that the distinction between the bases of the two points of view [2] was

---

1. In some states the statutes define the offense as being committed by one who knows or who has reasonable cause to believe that the property received had been stolen. See, e. g., 21 O.S.1971, § 1713(1); Hutton v. State, Okl.Cr., 494 P.2d 1246 (1972).

2. A third approach is that taken by the Illinois Court. The Court has followed the majority rule in construing the Illinois statute to require proof that the circumstances surrounding the transaction were such as to make the *Defendant* believe that the goods had been stolen and that guilty knowledge may be inferred from the attendant facts and circumstances. However, in People v. Rife, 382 Ill. 588, 48 N.E.2d 367, 372 (1943) the Illinois Court held that:
   " . . . In determining whether the fact existed, the jury will be justified in presuming that the accused acted rationally and that whatever would convey knowledge or induce belief in the mind of a reasonable person, would, in the absence of countervailing evidence, be sufficient to apprise him of the like fact, or induce in his mind the like impression and belief. . . . "

clarified by an opinion from the Circuit Court of Appeals, 2nd Circuit, written by Judge Learned Hand. He wrote:

"The defendants ask us to distinguish between 'knowing' that goods are stolen and merely being put upon an inquiry which would have led to discovery; but they have misconceived the distinction which the decisions have made. The receivers of stolen goods almost never 'know' that they have been stolen, in the sense that they could testify to it in a court room. The business could not be so conducted, for those who sell the goods —the 'fences'—must keep up a more respectable front than is generally possible for the thieves. Nor are we to suppose that the thieves will ordinarily admit their theft to the receivers: that would much impair their bargaining power. For this reason, some decisions even go so far as to hold that it is enough, if a reasonable man in the receiver's position would have supposed that the goods were stolen. That we think is wrong; and the better law is otherwise, although of course the fact that a reasonable man would have thought that they had been stolen, is some basis for finding that the accused actually did think so. But that the jury must find that the receiver did more than infer the theft from the circumstances has never been demanded, so far as we know; and to demand more would emasculate the statute, for the evil against which it is directed is exactly that: i. e., making a market for stolen goods which the purchaser believes to have probably been stolen." United States v. Werner, 160 F.2d 438, 441–442 (2nd Cir. 1947).

During the period when our own insolvency statute was effective, the law barred the claim of "a person who has accepted any preference, knowing that the debtor was insolvent". In examining the effect of information as to the debtor's financial condition which had been received by the creditor, our Court then found little, if any, difference between the concept of "knowing", having "actual notice" and "having reasonable cause to believe". Morey v. Milliken, 86 Me. 464, 30 A. 102 (1894). However, different public policies underlie the insolvency laws and the criminal laws and our Legislature's choice of the word "knowing" to circumscribe the conduct constituting the commission of a felony indicates to us that more than mere notice or information which would have induced belief in *someone else* was intended.

It appears to us that the minority jurisdictions which follow the "ordinary reasonable man" test are failing to stress sufficiently the distinction between civil and criminal responsibility. In civil cases the failure of the defendant to act with the degree of care which a person of ordinary prudence would have used may be the test of his responsibility without any determination that the defendant, himself, was a person of ordinary prudence or that he had any wrongful intent. On the other hand, the very essence of this criminal offense is the intentional wrongdoing of the defendant.

Such was the case at common law (State v. Alpert, supra) and if the Legislature had intended something less than actual knowledge, more appropriate language could easily have been chosen.

The distinction is more than one of semantics. It is made necessary by the fact that while a defendant may have received information which would have convinced a person of ordinary intelligence and average capacity to comprehend and evaluate

Some modification of this position appears in more recent cases where the rule is stated to be:

"Guilty knowledge may be established by proof of circumstances which would induce belief in a reasonable mind that the property had been stolen *and by the receipt of such property by the accused without inquiry as to its source or the title of the one from whom it was received.* . . ." (Emphasis added.) People v. Stewart, 20 Ill.2d 387, 169 N.E.2d 796, 799 (1960); People v. Grodkiewicz, 16 Ill.2d 192, 157 N.E.2d 16, 19 (1959); People v. Piszczek, 404 Ill. 465, 89 N.E.2d 387, 391 (1949).

facts, a defendant may be a person of less than average intelligence, comprehension and reasoning powers. The true test is, did the *defendant* know the goods were stolen.

This is not to say that the defendant must have direct knowledge or positive proof that the goods were stolen, such as he would have gained by actually witnessing the theft or hearing the admission of the thief. It is enough if he was made aware of circumstances which caused him to believe that they were stolen. State v. Alpert, supra; People v. Schroeder, 264 Cal.App.2d 217, 70 Cal.Rptr. 491 (1968); People v. Rife, supra.

The fact that the jury must be satisfied as to the state of the defendant's personal belief does not present the State with an insurmountable task when direct proof of his belief is absent. Juries have been instructed from time immemorial as to other offenses that they may draw rational inferences as to intent from a defendant's speech and conduct in relation to the subject matter and from evidence showing the information of which a defendant was aware. The state of a defendant's belief may be resolved by inference in the same manner. Schaffer v. United States, 221 F.2d 17 (5th Cir. 1955).

While the objective test of what an ordinary intelligent man would have believed cannot serve as the absolute standard which determines the defendant's guilt or innocence, the jury, in making its determination as to the state of a defendant's belief, may properly take into consideration, among other things, the belief which the jury concludes a person of ordinary intellectual capacity would have formed from such facts and circumstances. The jury may consider this in the light of its evaluation of a defendant as an intelligent person, based upon what the jury has learned about the defendant from testimony and observation. United States v. Werner, supra.

The Presiding Justice several times presented the issue to the jury in the alternative—that is, that the requirement of guilty knowledge was satisfied if the jury found *either* that the Defendant believed the goods had been stolen *or* that a reasonable man under those circumstances would have believed that they had been stolen.

Since we are convinced that the statute must be construed to require proof that the Defendant himself believed that the goods were stolen, the verdict must be set aside.

Appeal sustained. Remanded for new trial.

All Justices concurring.