**STATE of Maine**

**v.**

**Robert J. MELANSON.**

Supreme Judicial Court of Maine.

Sept. 4, 1974.

Roland A. Cole, County Atty., Alfred, Ronald Battocchi, Student, for plaintiff.

Lipman, Gingras & Speers, by Sumner H. Lipman, Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

Indicted for having violated 17 M.R.S.A. § 3551, defendant, Robert J. Melanson, was tried before a jury in May of 1972 in the Superior Court (York County). He was found guilty as charged, the jury determining that the property involved was of the value of more than $100.00.[1] Defendant was sentenced to serve a term of one to three years in the Maine State Prison and has appealed from the judgment of conviction.

The appeal presents two issues: (1) whether the charge of the presiding Justice requires reversal of the judgment of conviction because, allegedly, a segment of the charge contravened the law of Maine concerning defendant's "knowing . . . [the property] to be stolen . . ." as delineated in State v. Beale, Me., 299 A.2d 921 (1973); and (2) whether the totality of the evidence was legally sufficient to prove that defendant bought stolen property "knowing it to be stolen . . ." within the State v. Beale doctrine.

The evidence clearly warranted jury findings of the following facts.

On November 29, 1971 four youths, intending to take and sell any valuable and saleable property they would find, committed a break and entry into a house in Kennebunk, Maine, owned by Edward and Margaret Richardson. Once inside the house, the "four" assembled the property they decided to take and sell (including furniture, glassware and various miscellaneous items) in the living-room on the first floor of the house.

\* \* \* \* \*

"2. *Value exceeds $100.* If the value thereof exceeds $100, by a fine of not more than $500 or by imprisonment for not more than 5 years."

1. 17 M.R.S.A. § 3551, as it read in 1972, provided:

"Whoever buys, receives or aids in concealing stolen property, knowing it to be stolen, shall be punished:

At approximately five or six o'clock in the evening of November 30, 1971 the four youths went to the vicinity of an antique shop in Wells, Maine, owned and operated by the defendant, bringing with them, from among the property they had assembled in the Richardson house, two andirons and a brass kettle. Two, Scott Burgess and Timothy Butler, then entered the store with the andirons and kettle. They asked defendant whether he was interested in purchasing the items. After some discussion defendant bought the andirons and kettle, paying $40.00 for them.[2] The "four" then left defendant's store and forthwith rented a U-haul truck which they took to the Richardson house and loaded with the other merchandise collected in the living-room. This took approximately four hours, after which the youths again went to defendant's shop. Defendant greeted them at the door and spoke with them for a short time. Working together, the four young men backed up the truck to the front door of the store and unloaded the merchandise, taking everything (except a large desk) to an empty room on the second floor of the store. At this time, defendant paid $160.00 in cash and told the "four" to return the next day when, after he had opportunity more carefully to assess the value of the property, he would pay them the balance of the price he thought fair. The four youths returned to the store the next day, and defendant told them that he would pay them an additional $200.00. At first the young men were dissatisfied with the offer but ultimately accepted it after defendant informed them

that they could go elsewhere if they didn't like the price he was willing to pay.

After the young men had received the $200.00 in cash and were about to leave the store, defendant tapped Scott Burgess on the shoulder and said that he wanted to speak further with him "that evening." Burgess returned to defendant's shop that same evening, accompanied by Butler,[3] to learn what defendant had on his mind.

As to the conversation which then occurred Burgess testified that defendant

" . . . said that he didn't want any more goods from them because his place was being watched."

In his own testimony defendant, although acknowledging that there had been such a discussion, claimed that he was unable to remember when it had occurred. Defendant admitted that he had told Burgess that he did not want any more merchandise from them. He denied, however, that he had made any statement that his place was being watched and asserted that the reason he had mentioned·was that he had heard "rumbles" of a "break" in the Kennebunk area.

1

In the evaluation of defendant's contention on appeal that the judgment of conviction must be reversed because of error in the instructions of the presiding Justice to the jury, we must note, initially, that defendant failed to save the issue for appellate cognizance by adequate compliance with Rule 30(b) M.R.Crim.P.[4] In

2. Shortly after Burgess and Butler had entered the store the other two of the foursome, Mark Zeiner and Norris Welch, came into the shop and overheard some of the conversation pertaining to the purchase.

3. Burgess and Butler had been driven to defendant's store by the other two members of the foursome, Zeiner and Welch, who remained in the car while Burgess and Butler entered the store.

4. When the Court had completed its instructions to the jury defendant made no objections to any portions of the charge as given. He

did, however, request the presiding Justice to give as an additional instruction the following:

"It is not sufficient to sustain a conviction that the facts were such as 'in all probability' would make Defendant believe that the goods were stolen, or that 'he ought to have known' that they were stolen. The evidence must go a substantial step further and satisfy the jury that he did know or believe."

The presiding Justice did not give this instruction in the language in which it was requested but dealt with it by telling the jury:

the instant appeal, then, error in the charge of the presiding Justice, if any, will be given cognizance only if a reversal of the judgment of conviction is required because there was manifest error causing serious injustice to defendant. Rule 52(b) M.R.Crim.P.; State v. Niemszyk, Me., 303 A.2d 105 (1973); State v. McKeough, Me., 300 A.2d 755 (1973); State v. Collins, Me., 297 A.2d 620 (1972).

■ Defendant's argument focuses upon three sentences extracted from the entirety of the charge to the jury in which the presiding Justice said:

> "Now in the trial of the case, there has been—and when I say knowing, our courts have defined knowing with knowledge means merely a knowledge of the existence of the facts. That is knowing, are the existing facts. Do you know these existing facts?

Defendant claims that the references to "existing facts" in conjunction with the words, "do *you* know", (emphasis supplied) had a tendency to inform the members of the jury that they were to put themselves in defendant's place and if *they* then concluded that, *as reasonable people, they* would think that the goods were stolen, the jury should decide that defendant had acted "knowing . . . [the property] to be stolen . . . ." Thus, asserts defendant, the presiding Justice instructed contrary to State v. Beale, supra, because, in effect, he told the jury to use the *objective* approach rejected in State v. Beale, supra,—i. e., whether

> "a person of ordinary intelligence and average capacity to comprehend and evaluate facts" (299 A.2d at p. 924)

would in the circumstances have believed that the goods were stolen.

Defendant's postition is unsound. Even if we assume, without deciding, that the three sentences isolated by defendant for microscopic scrutiny have the significance defendant attributes to them, the instructions of the presiding Justice taken in their entirety cannot be held manifest error causing serious injustice to defendant.

Throughout his charge the presiding Justice told the jury, repeatedly, that defendant could be found guilty only if he had "known" that the merchandise he was purchasing was stolen property. Prior to stating the three sentences defendant has extracted for complaint, the presiding Justice said:

> "Now when he bought the property, at the moment of the purchase did he *know* that that property was stolen? That is the burden of proof that the State has to carry." (emphasis supplied)

In instructions given after the segment under attack the presiding Justice told the jury:

> "If you find that the State has carried the burden of proof that the accused bought the property, or that he concealed it, or received it knowing it to have been stolen, you must return a verdict of guilty. If, on the other hand, you have a reasonable doubt that he didn't buy it, or he didn't receive it, *or* he didn't *know* it was stolen, then you have a verdict of not guilty." (emphasis supplied)

Finally, as already mentioned and as his response to defendant's specific instruc-

---

"I think I have covered this, Madam Forewoman. But a person receiving stolen goods is not sufficient. They must know that it is stolen goods when they receive it, or they aid in the concealing of it. Just because it is stolen, and they do not have knowledge of it, it is not sufficient to warrant a conviction."

Thereafter, counsel for the defendant made no objection to any portion of the charge as previously given and made no objection to the manner in which the Court had purported to give to the jury the substance of the instruction defendant had requested.

The end result, therefore, was that counsel for the defendant had indicated that the Court had satisfied him in the manner in which it had given a *total* charge concerning the essential element of defendant's "knowing . . . [the property] to be stolen . . . ."

tional request, the presiding Justice told the jury:

" . . . a person receiving stolen goods is not sufficient. They must *know* that it is stolen goods . . .. Just because it is stolen, and *they do not have knowledge* of it, . . . is not sufficient to warrant a conviction." (emphasis supplied)

This persistent use by the presiding Justice of the word, "know", unaccompanied by further explanation, did not cause serious injustice to defendant but made the charge more favorable to him than is warranted under State v. Beale.

 That case emphasizes that:

"The . . . test . . ., did the *defendant* know the goods were stolen . . ."

" . . . is not to say that the defendant must have direct knowledge or positive proof that the goods were stolen, such as he would have gained by actually witnessing the theft or hearing the admission of the thief. It is enough if he was made aware of circumstances which caused him to believe that they were stolen." (p. 925)

Webster's Seventh New Collegiate Dictionary lists as primary meanings of the words, "to know": "to perceive directly"; "to have direct cognition of"; "to be aware of the truth or factuality of"; "to be convinced or certain of." Since these are the meanings the jurors, as lay persons, would attribute to the concept of "knowing", the totality of the charge of the presiding Justice strongly tended to impress upon the jury that defendant should be found guilty only if he was *certain,* or had *positive proof,* that the goods were stolen, thereby to induce the jury, contrary to the law as delineated in State v. Beale, supra, to acquit defendant if the jury found that defendant had a "belief" that the goods were stolen but he was not "sure" or did not have "positive proof" of

the truth, or factuality, of their being stolen.

Defendant, therefore, can take nothing from a claim that there was manifest error in the change of the presiding Justice which caused him serious injustice.

### 2

We find likewise without merit defendant's contention that the evidence was inadequate to support a jury conclusion beyond a reasonable doubt that defendant, at the time he purchased the goods here involved, had in his mind the subjective thought, as his belief, that the goods were stolen.

 Although under State v. Beale, supra, it is *defendant's* actual state of mind which is the ultimate fact to be found by the jury,

" . . . the jury, in making its determination as to the state of a defendant's belief, may properly take into consideration, among other things, the belief which the jury concludes a person of ordinary intellectual capacity would have formed from such facts and circumstances." (p. 925 of State v. Beale)

Here, the evidence was abundant that defendant was aware of circumstances sufficient to alert a person of average intellectual capacity to the likelihood that the four youths were selling stolen goods. The jury was surely entitled to believe, since even defendant admitted the point in his own testimony, that, as testified by Scott Burgess and Mark Zeiner, defendant had been informed *before* he paid $40.00 to buy the andirons and brass kettle that the four young men planned to rent a U-haul truck and use it to bring much more merchandise to defendant's shop. The fact alone that four young men with whom defendant had never had prior dealings of consequence would be offering to sell a bulk of merchandise of considerable value would alert defendant, were he reacting as a person of

average intellectual capacity, to the prospect that the merchandise was stolen property.

 In conjunction with this evidence showing that defendant was aware of facts placing a reasonable person on notice that stolen property was involved in the transactions, the jury was warranted in taking into account the further evidence that (1) as he was consummating his purchase, defendant tapped Burgess on the shoulder and told him that he wished to speak further with him that evening and (2) when, as requested, Burgess returned that evening (with Butler), defendant told them that he wanted no more merchandise from them because his place was being watched.

The jury was, therefore, clearly justified in concluding beyond a reasonable doubt that defendant in fact had in his mind the idea, as his own subjective belief, that the goods he was purchasing were stolen goods. Indeed, the jury would have acted reasonably if it regarded this conclusion as buttressed, rather than weakened, by defendant's own explanation. Although defendant denied that he had told Burgess or Butler that his place was being watched, defendant admitted stating to them that he wanted no more merchandise from them because he had heard "rumbles" about a "break" in Kennebunk. If, as was the jury's prerogative, the jury believed that the incident of defendant's tapping Burgess on the shoulder and requesting to see him again "that evening" occurred *at the time* defendant was paying the balance of the purchase price for the large bulk of merchandise, and that it was during the subsequent discussion "that evening" that defendant made his remark concerning wanting no more merchandise from them because, as defendant claims to have stated, defendant had heard "rumbles" of a "break" in Kennebunk, the jury was plainly entitled to draw the inference that defendant had *already* heard the "rumbles" *before* he paid over the balance of the purchase price; and it was because he had *already* heard of the "rumbles" that he tapped

Burgess on the shoulder and asked to talk with him later that evening precisely for the purpose of giving such explanation as to why he wanted no more merchandise.

The verdict of the jury finding defendant guilty as charged was supported by legally adequate evidence.

The entry is:

Appeal denied.

All Justices concurring.