STATE of Maine

v.

Linwood BARKER.

Supreme Judicial Court of Maine.

May 26, 1978.

---

Cheryl Harrington (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Eames & Sterns by Richard Sterns (orally), Skowhegan, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

The defendant, Linwood Barker, was found guilty by a Kennebec County jury on six indictments charging cheating by false pretenses, 17 M.R.S.A. § 1601 (1964),[1] and six indictments charging theft by deception, 17-A M.R.S.A. § 354 (Supp.1977).[2] He appeals the judgments and sentences entered thereon.

We deny the appeal.

From the evidence presented at trial, the jury was justified in finding the following facts beyond a reasonable doubt. At the times pertinent to the matters charged in the indictments, the defendant was the owner of the Northland Press, a publishing company. In January 1972 defendant began publishing on a weekly basis a magazine entitled "Maine Athlete" devoted primarily to covering high school boys' sports activities. Through July 1972 he published 24 issues of "Maine Athlete." Having by then determined that it was not feasible to continue publication on a weekly basis, the defendant concluded that the best method would be monthly publication. By his own admission, however, his publishing of "Maine Athlete" after July 1972 was on an "extreme quarterly" basis and only four issues appeared, at sporadic intervals, between August 1973 and March 1975. In the

---

1. Section 1601 of Title 17 was repealed by P.L. 1975, ch. 499, § 8 (eff. May 1, 1976). Prior to its repeal it read:

"*Cheating by false pretenses*

"Whoever designedly and by any false pretense or privy or false token and with intent to defraud, obtains from another any money, goods or other property, the making of a loan or credit, the extension of credit, the discount of an account receivable or what is represented to be an account receivable, or the making, acceptance, discount, sale or indorsement of a bill of exchange, bank check or promissory note, or his signature to any written instrument, the false making of which is forgery, or whoever knowingly, and with intent to defraud, sells, conveys, mortgages or pledges to another personal property on which there is an existing mortgage or to which he has no title, without notice to the purchaser of such mortgage or of such want of title, is guilty of cheating by false pretenses and shall be punished by a fine of not more than $500 or by imprisonment for not

more than 7 years. A promise, if unconditional and made without present intention of performance, will constitute a false pretense within this section."

2. Section 354 of the Maine Criminal Code (Title 17-A), effective May 1, 1976, provides:

"*Theft by deception*

"1. A person is guilty of theft if he obtains or exercises control over property of another as a result of deception and with an intention to deprive him thereof.

"2. For purposes of this section, deception occurs when a person intentionally:

"A. Creates or reinforces an impression which is false and which that person does not believe to be true, including false impressions as to law, value, knowledge, opinion, intention or other state of mind. Provided, however, that an intention not to perform a promise, or knowledge that a promise will not be performed, shall not be inferred from the fact alone that the promise was not performed;".

spring of 1974 defendant also published a single issue of a second magazine called "Megaphone" covering girls' athletic activities.

In early 1975 defendant embarked on yet a third business venture involving "Maine Athlete of the Year" awards. Through an agent, he contacted several businesses and solicited funds for "all-star" trophies to be awarded to selected students at local schools. Each business signing into the program was to be named as a sponsor on the trophy purchased by it, and the athletes to whom the trophies were awarded were to be specially featured in issues of "Maine Athlete."

Throughout 1975 and up to the date of his indictments in July 1976, defendant, through a succession of sales representatives, continued to solicit and collect money for advertising to appear in both "Maine Athlete" and "Megaphone." In their solicitation, defendant's agents represented that both publications were monthlies, notwithstanding that no issue of either magazine had appeared since "Maine Athlete" in March of 1975. During 1975 defendant also obtained money from various businesses which subscribed as sponsors of "Maine Athlete" trophies. Through this prolonged period of nonpublication, defendant in part paid his own living expenses from moneys collected for advertising and trophy sponsorships and took virtually no affirmative steps, beyond merely soliciting funds, toward publication of advertisements or award of "all-star" trophies.

The uncontradicted evidence showed that in several instances no "Maine Athlete" all-stars were ever selected and featured in the magazine, nor were trophies ever awarded, as represented by the defendant. It is also

undisputed that although defendant did in fact publish one further issue each of "Maine Athlete" and "Megaphone" including several of the solicited advertisements, defendant published those issues in early October 1976, over two months after he had been indicted on July 28, 1976, for several alleged acts of cheating by false pretenses and theft by deception, and on the eve of his trial on those indictments.[3]

## I. *Sufficiency of the Section 354 Indictments*

■ Defendant initially attacks his convictions for theft by deception on the ground that each section 354 indictment fails to allege all essential elements of the offense. Each indictment under section 354 of the Maine Criminal Code charged:

"On or about the _____ day of May, 1976, at _____, in the County of Kennebec and State of Maine, Linwood Barker, with intent to deprive [a named business person] of its [his] property, did obtain or exercise unauthorized control over the property of the said business or person, to wit, _____ dollars ($_____), by falsely promising through his agent, [name omitted], to place a commercial ad in a publication entitled the Megaphone."

None of the defendant's section 354 indictments directly and positively avers that the promise made by the defendant, through his agent, was "unconditional" and "made without present intention of performance." Under the pre-Code counterpart of section 354, 17 M.R.S.A. § 1601 (1964), it was necessary for the State to allege and prove that a promise bore both those characteristics in order for it to constitute a "false pretense" within the meaning of that statute.[4] *State v. Austin,* 159 Me. 71, 188 A.2d 275 (1963).

---

3. Defendant's twelve indictments break down as follows. Under section 1601, two were based upon the "all-star" trophy program, three were based upon sales of advertisements to appear in "Maine Athlete," and one was based upon the sale of an advertisement to appear in "Megaphone." All of the defendant's section 354 indictments arose from defendant's alleged sale of advertisements to appear in "Megaphone." The indictments were brought under section 1601 or section 354, depending

upon whether the alleged conduct occurred before or after May 1, 1976, the effective date of the repeal of former section 1601 and the substitution of section 354 of the Code.

4. The last sentence of section 1601, enacted by P.L.1961, ch. 40, provided that "[a] promise, if unconditional and made without present intention of performance, will constitute a false pretense within this section."

Contrary to defendant's assertions, however, the State's failure expressly to plead those facts in the section 354 indictments does not render those instruments fatally defective.

Section 354 makes a "person . . . guilty of theft if he obtains or exercises unauthorized control over property of another *as a result of deception* and with an intention to deprive him thereof." (Emphasis added) On its face, each of defendant's indictments alleges unequivocally that the defendant, through his agent, obtained or exercised unauthorized control over the property of another with the intent to deprive the owner thereof and that the property was obtained by him "as a result of deception," *i. e.,* "by falsely promising."[5] Furthermore, each indictment here involved goes further than merely to allege the essential element of "deception" in general conclusory terms.[6] Each indictment specifically alleges that the defendant obtained the property "by falsely promising . . . to place a commercial ad in a publication entitled the Megaphone." That language amply serves to describe the *means* of deception allegedly utilized by the defendant in carrying out the thefts charged.

Section 354(2)(A) assists us in reaching that determination. That paragraph provides:

"For purposes of this section, deception occurs when a person intentionally:

"Creates or reinforces an impression which is false and which that person does not believe to be true, including false impressions as to law, value, knowledge, opinion, *intention* or other state of mind. Provided, however, that *an intention not to perform a promise, or knowledge that a promise will not be performed,* shall not be inferred from the fact alone that the promise was not performed . . . ." (Emphasis added)

In contrast to the former statute, which only in recent times was amended to permit any promise whatsoever to constitute a false pretense, the definition of "deception" under the code offense embraces *any* intentional conduct which has the proscribed effect of "creat[ing] or reinforc[ing] an impression which is false and which the actor does not believe to be true . . . ." The definition of deception is unrestricted as to means. Clearly, a promise falls within the statute, and equally clearly, it is no longer material whether that promise is conditional or not.

Under section 354 the false impression created or reinforced by the defendant can relate to an "intention" or any other "state of mind" of the actor. The deception is complete if the false impression as to intention is given to a third person and, in the terms of the statute, the actor does not subjectively believe at the time of promising that he intends to carry out the promise. The commentary to the analogous provision of the Model Penal Code,[7] obviously

---

5. Section 354 of the Code carries forward the basic elements of former section 1601. See Advisory Committee's Comment to 17-A M.R.S.A. § 354 (Supp.1977). In *State v. Kerr,* 117 Me. 254, 103 A. 585 (1918), this court enumerated the essential elements of cheating by false pretenses as follows: (1) false pretenses, (2) made "designedly", (3) by the defendant, or someone authorized by him, (4) that in fact were false, (5) and deceived someone, such that (6) property of another was thereby obtained. The critical difference between the two statutes for purposes of the present discussion lies in the differing treatment of promises as means of perpetrating the deception.

6. *Cf., e. g., State v. Chick,* Me., 263 A.2d 71 (1970) (indictment for conspiracy "to cheat the inhabitants of the Town of Jay, by obtaining therefrom certain money, goods or property by

false pretenses and with intent to defraud in violation of 17 M.R.S.A. § 1601" held insufficient); *State v. Roberts,* 34 Me. 320, 322 (1851) (indictment for conspiracy by "false pretenses" held insufficient; "[b]y this the accused could not be sufficiently informed of the acts, against which they were called to answer. The description of the means are [sic] too general, and not in accordance with the established rules of criminal pleading").

7. *Model Penal Code* § 223.3 (1962) provides in part:
"Theft by Deception
"A person is guilty of theft if he obtains property of another by deception. A person deceives if he purposely:
"(a) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but

the model for our section 354, sheds light upon the meaning of the latter requirement:

"If the actor in fact believes in the accuracy of the impression created or reinforced, he is not guilty of deception even though his belief was stupid or unreasonable. *But it is not necessary for the prosecution to prove that the actor affirmatively disbelieved; if he created the impression that he believed something to be true, when in fact he had no belief on the subject, he has deceived.*" (Emphasis added) *Model Penal Code § 206.2,* Comment at 66 (Tent. Draft No. 2, 1954).

Of course, when the actor's deception consists of creating a false impression by means of a promise that he intends to perform in accordance with that promise, the State must plead and prove not only that the actor did not *believe* in his intention to perform, but also, because of the requirement that the actor's impression of intention be false, that the actor did not in fact *intend* to perform at the moment of making his promise.

From this analysis we conclude that the phrase "by falsely promising" adequately states the means of deception allegedly employed by the defendant. That language charged the defendant, through his agent, with having created, by means of a promise, an impression in the minds of the third parties named that he intended to publish a commercial advertisement in "Megaphone," at some unspecified date, in exchange for the consideration paid. The word "falsely" suffices to connote both that the impression created was false, *i. e.,* that the defendant did not in fact intend to publish *at all* and, by necessary implication, that the defendant did not at the time of promising believe that he intended to publish as promised.

*Cf. State v. Thibodeau,* Me., 353 A.2d 595 (1976); *Logan v. State,* Me., 263 A.2d 266 (1970).[8]

We find no infirmity in defendant's indictments for theft by deception under section 354 of the Maine Criminal Code.

## II. Sufficiency of the Evidence

■ By timely motion for judgment of acquittal at the close of all the evidence, which was denied, defendant preserved for appellate review the issue whether the jury was justified on all the evidence in believing that defendant was guilty beyond a reasonable doubt on each of the twelve indictments. *See, e. g., State v. Lewis,* Me., 373 A.2d 603, 609 (1977). Defendant takes nothing by this point of appeal, however, for the record contains sufficient evidence to support the jury's verdicts.

Twenty-two witnesses testified at trial for the State, and the defendant took the stand in his own behalf. The State's witnesses included a representative of each business from which the defendant or his agent had allegedly obtained money for either a trophy or advertising and former sales employees of the defendant. Their testimony established that each business named in the indictments had been visited by defendant or his agent and that money had been solicited on the representations alleged in the indictments.

The jury could rationally determine from all the evidence that at the time defendant obtained by solicitations the money alleged in each indictment, he did not intend to perform as then represented. Although defendant did include several of the advertisements he solicited in the October 1976 publications of "Maine Athlete" and "Megaphone," those issues were not published un-

deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise."

**8.** In *Ellis v. State,* Me., 276 A.2d 438 (1971), an appeal by the State from the granting of defendant's motion for habeas corpus for failure of the indictment to allege an offense under former section 1601, we noted with approval the more flexible approach toward criminal

pleading adopted by this court in *Logan v. State, supra.* Although in *Ellis* we held the indictment defective, we there stated that "[i]f the allegations . . . in their totality, suppl[y] all the necessary averments, *either positively or by necessary implication,* a defendant could not be misled and the identity of the offense charged would be clear." (Emphasis in original) *Id.* at 440.

til substantially after the indictments and on the very eve of his trial. The jury could justifiably have believed, in view of all the other circumstances concerning the precarious financial status of defendant's business and his use of the solicited funds for personal living expenses, that those last publications were merely after-the-fact attempts to dress up his defense before the jury. Their timing detracts from any effectiveness to refute the inference arising from the evidence that defendant did not have an intention to publish at the time he solicited the advertising. Defendant's own agents testified that when soliciting the funds in April and May of 1976, they had at defendant's direction represented the magazines to be monthly publications. At the same time, the jury also knew from defendant's own testimony that "Maine Athlete" had in fact been reduced to publication only on an "extreme quarterly" basis and did not appear at all from March 1975 to October 1976. Defendant nonetheless continued to recruit new salespeople to solicit money for advertising through 1975 and in 1976, when neither magazine was published until October. With respect to the two indictments based upon the "all-star" trophies, the jury could find that they were never purchased or awarded in keeping with defendant's promises. Although the fact that a promise is not performed is not determinative of a person's intent at the time of promising,[9] the jury was here entitled to give that fact of nonperformance some weight, in view of all the other circumstances pointing toward defendant's intent.

The jury could find from all the evidence that, as alleged in the indictments, defendant did not intend to publish either magazine *at any time* when he solicited the advertising revenues through his agents, nor did he intend to purchase and award the trophies. As the State adequately proved all essential elements of the offenses charged, the defendant's attack on the sufficiency of the evidence is without merit.

### III. *Jury Instructions*

■ Defendant claims that the Superior Court erred in instructing the jury on the element of his specific intent not to perform the promises. His assertion of error goes both to the substance of the charge and to its allegedly prejudicial placement at the close of all the instructions. In view of the totality of the instructions given, however, we do not consider that the *placement* of the charge thus attacked constituted error, let alone error *prejudicial* to the defendant. *See State v. Inman,* Me., 350 A.2d 582 (1976); *State v. Poulin,* Me., 268 A.2d 475 (1970). Moreover, defendant failed to preserve for appellate review his claim of substantive error in the charge.[10] We thus will take cognizance of any error in the charge only under the "manifest error-serious injustice" standard, "which, as calculated to maintain a basic integrity in judicial proceedings, will not tolerate a conviction produced by a trial fundamentally unfair." *State v. Pomerleau,* Me., 363 A.2d 692, 697 (1976). On our review of the court's charge, we find that although it is in some respects erroneous, it contains no error of such compelling magnitude as to warrant the conclusion that defendant's trial was fundamentally unfair.

Twice in the course of the charge to the jury, the Superior Court focused upon the necessity of the State's proving beyond a

---

**9.** *Cf.* section 354(2)(A) which now expressly provides that "an intention not to perform a promise, or knowledge that a promise will not be performed, shall not be inferred *from the fact alone* that the promise was not performed." (Emphasis added)

**10.** At the close of the instructions, the presiding justice inquired of counsel whether there were any further instructions, at which point counsel for defendant requested an additional instruction on specific intent. When the jus-

tice explained that he already had given that charge in substance, defense counsel yielded and simply said, "Thank you, Your Honor." He made no further requests or objections. As recent authority of this court makes clear, defendant thereby waived any objection he may otherwise have had to the substance of the instructions. *See State v. Pomerleau,* Me., 383 A.2d 692 (1976); *cf. Terrio v. Millinocket Community Hospital,* Me., 379 A.2d 135 (1977).

reasonable doubt that the defendant had not intended to perform the several promises at the time he obtained the moneys specified in the indictments. In closing, the court instructed the jury that it could find the defendant's intent by drawing reasonable inferences from all the facts:

"Just one more instruction on intent, and I will give you a recent United States decision, a court decision. The Court has said: 'It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts,' and knowing acts are intentional acts. 'The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances, and possessing like knowledge, should reasonably have expected to result from any intentional act or conscious omission.'

"So you must find that the act was intentional, but consciously omitted. Any such inference drawn is entitled to be considered by the jury in determining whether or not the State has proved beyond a reasonable doubt, as I have defined it to you, that the Defendant possessed the required criminal intent. And again I say to you, this is a crime which involves specific intent, and you must find that there is specific intent in order to find this Defendant guilty."

That jury instruction contained a misstatement of law, as recently explained by this court in *State v. Beale*, Me., 299 A.2d 921 (1973). We there concluded, after extensive review of the law of other jurisdictions, that

"the minority jurisdictions which follow the 'ordinary reasonable man' test are failing to stress sufficiently the distinction between civil and criminal responsibility. In civil cases the failure of the defendant to act with the degree of care which a person of ordinary prudence would have used may be the test of his responsibility without any determination that the defendant, himself, was a person of ordinary prudence or that he had wrongful intent. On the other hand, the very essence of this criminal offense is the intentional wrongdoing of the defendant.

"The distinction is more than one of semantics. It is made necessary by the fact that while a defendant may have received information which would have convinced a person of ordinary intelligence and average capacity to comprehend and evaluate facts, a defendant may be a person of less than average intelligence, comprehension and reasoning power. The true test is, did the *defendant* know the goods were stolen." (Emphasis in original) *Id.* at 924–25.

The court's instruction to the jury wrongly authorized it, in the language of the decision there quoted, to return verdicts of guilty upon drawing the inference "that the accused intended all of the consequences *which one standing in like circumstances and possessing like knowledge, should reasonably have expected to result from any intentional act* or omission." (Emphasis added) Although that substantive error cannot be deemed harmless, we do not consider that error as having so tainted the proceedings that the defendant was effectively deprived of his right to a trial free of manifest injustice. Here, the court had earlier correctly instructed the jury on proving intent,[11] and the charge, although not flawless, was in its entirety adequate to apprise the jury of the applicable principles of law. We have earlier reviewed the evidence and having found it sufficient to support the jury's verdicts, we see in the present case no grounds warranting reversal.

11. "[I]n that regard, intent is rarely susceptible of direct proof, and must ordinarily be inferred from the facts and circumstances disclosed by the evidence. It's impossible to get inside of someone's head, and to determine what their thinking process is, what's going on in their mind. It's utterly impossible to do so, other than to draw reasonable inferences from the facts which have been proven to your satisfaction, and you are permitted to do this. You must evaluate all of the circumstances, and you must, in the final analysis, be satisfied that all of the elements appear, and you must be satisfied by proof beyond a reasonable doubt."

### IV. *Joint Trial on Multiple Indictments*

 Defendant's remaining point on appeal concerns the Superior Court's alleged error in permitting him to be tried on all twelve indictments at a single trial. Our procedural rules invest the trial justice with discretion to order joinder or severance of indictments for trial. Rules 13, 14, M.R. Crim.P. We here discern no abuse of the discretion thus entrusted to the trial justice. *See State v. Gordon,* Me., 321 A.2d 352, 361–62 (1964). The justice instructed the jury not to consider the multiplicity of indictments as any evidence of the defendant's guilt. In any event, defendant failed to make any objection below to a single trial upon all twelve indictments.

The entry must be:

Appeal denied.

Judgments affirmed.

DELAHANTY, J., did not sit.