STATE of Maine

v.

**Charles F. RISIO, Jr. and Sandra Lawrence.**

Supreme Judicial Court of Maine.

June 28, 1978.

William R. Stokes (orally), Stephen L. Diamond, Pasquale Perrino, G. Arthur Brennan, Asst. Attys. Gen., Augusta, for plaintiff.

Leppo & Gens by Martin K. Leppo (orally), Thomas M. Hoopes, Anthony M. Traini, Boston, Mass., Lipman, Parks, Livingston & Lipman, P.A. by Sumner H. Lipman, David M. Lipman, Augusta, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

McKUSICK, Chief Justice.

In August 1977 defendants Charles F. Risio, Jr., and Sandra Lawrence were convicted by a Knox County jury of conspiracy to commit theft by deception of insurance proceeds in an amount exceeding $5,000 in violation of 17–A M.R.S.A. § 151 (Supp. 1976).[1] Each defendant appeals the judgment entered on the conviction below.

We deny the appeals.

The State's principal witness at trial was indicted co-conspirator Lorri Tierney, who entered a plea of guilty prior to defendants' trial. From her testimony, and the other evidence presented, the jury was justified in making the following findings of fact. Sometime in June 1976 Charles F. Risio, Jr., approached Tierney, then indebted to him, with a "foolproof idea." With Risio's assistance, Tierney would register and apply for insurance on a fictitious automobile. Later she would report it stolen to collect the insurance proceeds, from which she could repay Risio and retain some money for herself. After Tierney agreed to the proposal, Risio rented an apartment at 71 Mechanic Street in Camden, Maine. On June 29 Risio and Tierney drove from Boston, where both then resided, to Camden. En route Risio obtained Tierney's signature to a document dated the day before, purporting to be a bill of sale to a 1974 BMW Bavaria "3.0S" bearing "V.I.D." number 2191081, sold by one Albert Delong to Lorri Tierney "of Camden, Maine" for $8,500 cash. In nearby Rockland, Tierney and Risio registered "her BMW" with the Secretary of State. In Camden, on the same day, Risio accompanied Tierney to the Allen Insurance Agency where she applied for insurance on the fictitious BMW. She gave as her address Risio's apartment at 71 Mechanic Street. The policy subsequently issued to her provided "comprehensive" coverage equal to the "actual cash value" of the BMW.

Some days thereafter, but before Tierney made her insurance claim, she had occasion to meet with the defendant Sandra Lawrence at the latter's place of employment in Boston. Lawrence at that time advised Tierney that she knew what Tierney had done and that she too, acting also with Charles F. Risio, Jr., had registered and obtained insurance on a fictitious BMW in Camden, Maine, in the identical manner as Tierney. In addition to Tierney's testimony regarding that conversation, other evidence at trial showed that Lawrence and Risio had been in Camden on June 30, 1976, the next day after the Tierney insurance transaction. At that time Lawrence, accompanied by a man not identified in the evidence, had applied at the E. C. Moran Insurance Company in Rockland for insurance on a 1972 BMW, "VIN" number 2103112. The insurance policy ultimately issued to Lawrence also provided comprehensive coverage.[2]

Later in July, after the conversation between them, both Tierney and Lawrence made insurance claims. Tierney, again accompanied by defendant Risio, went to Kittery, Maine, on Saturday, July 17, where she telephoned police that "her BMW" had disappeared from the parking lot at Valle's restaurant. That very night Tierney drove back to Sandra Lawrence's residence in Hull, Massachusetts, where, after spending the weekend, she used Lawrence's telephone to report the theft to her insurance agency in Camden on Monday, July 19. On July 20 Lawrence notified the Boston police that "her BMW" was missing from a Boston street and later that day reported the alleged theft to her insurance company.

On January 3, 1977, a Knox County grand jury returned a seven-count indictment against Risio, Tierney, and Lawrence.[3]

---

1. 17–A M.R.S.A. § 151(1) provides:

   "A person is guilty of conspiracy if, with the intent that conduct be performed which, in fact, would constitute a crime or crimes, he agrees with one or more others to engage in or cause the performance of such conduct."

2. The terms of Lawrence's policy limited the insurer's liability to the excess loss over an initial $50 deductible.

3. Count I charged a conspiracy (in violation of 17–A M.R.S.A. § 151) among Risio, Tierney,

After Tierney's plea of guilty,[4] Risio and Lawrence were tried and convicted on Count I of the indictment, which charged, in material part,[5] that in violation of section 151 of Title 17–A Charles F. Risio, Jr., Lorri Tierney, and Sandra Lawrence had knowingly and intentionally agreed together and with each other, with intent that the crime be committed, to commit theft by deception of $17,000 in insurance proceeds.

### I. State's Proof of Property Value

Defendants initially contend that the Superior Court erred in refusing to grant their timely motion for judgment of acquittal based upon the alleged insufficiency of the evidence of "fair market value" of the two fictitious BMWs. In addition, defendants attack as erroneous the court's instructions to the jury on the element of "value" as part of the State's proof. Both contentions lack merit.

Count I of the indictment charged defendants with conspiring to commit theft by deception of insurance proceeds in the amount of $17,000.[6] For sentencing purposes, conspiracy is an offense classified one grade less serious than "the most serious crime which is its object." 17–A M.R.S.A. § 151(9) (Supp.1976). The alleged object of defendants' conspiracy was theft by deception in violation of section 354 of the Criminal Code, providing that "a person is guilty of theft if he obtains or exercises control over property of another as a result of deception and with an intention to deprive him thereof." The Code classifies all theft offenses for sentencing purposes according to the *value* of the property or services

stolen. 17–A M.R.S.A. § 362 (Supp.1976). Thus, in order for the State to prove the sentencing class of the alleged conspiracy, it was imperative that it prove beyond a reasonable doubt the value of that property which the defendants allegedly conspired to steal.

The indictment alleges unequivocally that the object of the defendants' conspiracy to commit theft by deception was "to obtain . . . property, *namely insurance proceeds in the amount of $17,000,* of the insurers with the intention to deprive said insurers thereof." (Emphasis added) The relevant property for purposes of valuation, therefore, consisted of *insurance proceeds,* and *not,* as urged by defendants, the *fictitious BMW automobiles.*

Ample evidence was introduced at trial from which the jury could find beyond a reasonable doubt that the value of the anticipated insurance proceeds exceeded $5,000. Each of the bills of sale to the Tierney and Lawrence BMWs recited $8,500 as the purchase price. Tierney represented that figure to the insurance agent when applying for insurance, and after the reported theft of her BMW, she repeated that figure to the insurance investigator. Similarly, Sandra Lawrence stated during a recorded interview with an insurance claims representative after reporting the theft of her BMW that she had paid $8,500 for the car. The insurance policies obtained by both Tierney and Lawrence provided "comprehensive" coverage basically equivalent to the "actual cash value" of the insured

and Lawrence to commit the crimes of theft by deception, unsworn falsification with intent to deceive a public servant, and fraud and falsity on applications for motor vehicle insurance. The six remaining counts charged Risio and Tierney, and then Risio and Lawrence, with criminal attempt (17–A M.R.S.A. § 152), unsworn falsification with intent to deceive a public servant (17–A M.R.S.A. § 453), and making a material misstatement of fact on an application for motor vehicle insurance (29 M.R.S.A. § 2181).

4. Tierney entered her plea of guilty to the section 453 charge of deceiving a public servant and received a fine of $500.

5. The trial court did not charge the jury on the alleged conspiracies to commit the crimes of unsworn falsification and fraud in applying for motor vehicle insurance. Count I also alleged the commission of those offenses as "substantial steps" in the conspiracy to commit the ultimate theft by deception of the insurance proceeds. The court's jury charge was consistent with those allegations.

6. See n. 5 above.

vehicles.[7] The jury was entitled to conclude that the participants in the conspiracy hoped to recover from each separate insurance arrangement in excess of $5,000, namely, $8,500.

Although on appeal defendants attack the correctness of the Superior Court's jury instructions on value, they failed by timely objection to preserve the issue for appellate review. *See, e. g., State v. Barker,* Me., 387 A.2d 14 (1978); *State v. Pomerleau,* Me., 363 A.2d 692 (1976).[8] Our examination of the charge discloses no error, much less manifest error, in the instructions given.

■ In its principal charge the court on three occasions emphasized the importance of the jury's determining the "fair market value" of the two allegedly fictitious BMW automobiles. In each instance, however, the court referred to the value of the cars in the context of instructing the jury on the State's proof of the ultimate goal of the conspiracy, namely, the insurance proceeds.[9] In the context given, the court made it sufficiently clear that the State had to prove the *purported* value of the two BMWs, as represented by the defendants, in order to satisfy its proof of the conspirators' anticipated "take" from the theft by deception. The charge was not in error and could not have generated confusion in the minds of the jurors. *See, e. g., State v. Lewisohn,* Me., 379 A.2d 1192, 1207 (1977).

## II. Variance

■ Defendants next argue that the Superior Court erred in refusing to grant their timely motion for judgment of acquittal on the ground of a material variance between their indictment for conspiracy to commit theft by deception and the proof. Whereas the indictment alleges a single unitary conspiracy involving Risio, Tierney, and Law-

7. The actual scope of recovery available under the Tierney and Lawrence policies in the event of loss due to theft had relevance only insofar as that sum cast light upon the intent of the parties respecting the hoped-for results of the underlying theft by deception. We do not mean to imply, however, that the *actual recoveries possible* by the terms of the policies fixes the value of the conspiracy's objective. The essential element of the crime of conspiracy, both at common law and under section 151 of the Code, is an *agreement* by a combination of two or more persons by concerted action to commit a crime. *See, e. g., State v. Parento,* 135 Me. 353, 197 A. 156 (1938). It is immaterial whether the object of that agreement is ever effected, or is capable of being effected. *See, e. g., United States v. Kellerman,* 431 F.2d 319, 323 (2d Cir. 1970); *State v. Mayberry,* 48 Me. 218, 238–40 (1859). Thus, in the present case each participant in the alleged conspiracy would be guilty of conspiring to obtain the intended amount of insurance proceeds even if, by the terms of the policies, no recovery whatsoever in fact was possible.

8. Defendants' counsel initially requested at the close of the jury charge an additional instruction on value which the court indicated it was willing to give. In its supplemental instructions, however, the court omitted to do so. Defendants' counsel raised no objection to that omission. No objection at all was lodged when the court, in response to an inquiry from the jury during its deliberations, later reiterated its initial instruction that

"it is for this Jury to determine whether or not from the evidence that you have heard, you are satisfied that the State has established the fair market value of the vehicles, *or the amount which is really the ultimate*—the amount with which the defendants, if in fact they engaged in a conspiracy, *the amount which they intended to obtain by deception from the insurance companies.*" (Emphasis added)

9. The trial court charged as follows:

"[I]t's important that you determine the fair market value of the vehicles in order to determine how much money the Defendants intended to obtain by this deception.

. . . . .

"You will consider the total value that the Defendants intended to receive from both cars, assuming obviously there was a conspiracy, and you determine the fair market value of the cars, and what it was you find the Defendants were anticipating that they were going to get.

. . . . .

"Evidence has been offered in one form or another with respect to the motor vehicles involved, and it is for this Jury to determine whether or not from the evidence that you have heard, you are satisfied that the State has established the fair market value of the vehicles, or the amount which is really the ultimate—the amount with which the Defendants, if in fact they engaged in a conspiracy, the amount which they intended to obtain by deception from the insurance companies."

rence, defendants claim that the State's proof at trial at most established two distinct conspiracies, one between Tierney and Risio and the other between Risio and Lawrence. The variance attack must fail, however, because the evidence was sufficient to support a finding of a single conspiracy as alleged.

Count I of the indictment charged that "Charles F. Risio, Jr., Lorri Tierney and Sandra Lawrence, knowingly and intentionally did agree together and with each other" to perpetrate the alleged theft by deception of $17,000 from the insurance companies. The indictment alleges a common agreement among Risio, Tierney, and Lawrence to "engage in or cause the performance of" conduct which "in fact would constitute a crime or crimes." See 17–A M.R. S.A. § 151(1). From the evidence the jury was justified in finding the existence of that alleged agreement beyond a reasonable doubt.

The evidence showed that Risio accompanied both Tierney and Lawrence on successive trips to Camden on June 29 and 30, 1976. On arrival, both women immediately registered fictitious BMW automobiles and applied for insurance on them, giving as their place of residence Risio's recently rented apartment at 71 Mechanic Street. The purported bills of sale to the two BMWs each listed an identical purchase price of $8,500. Significantly, Tierney testified that *after* she and Lawrence had insured fictitious BMWs in Camden but *before* they reported them stolen, she and Lawrence had an encounter in which Lawrence apprised Tierney that she, too, had gone to Camden with Risio and insured a fictitious BMW with the intent of setting up a false insurance claim. After that meeting, each woman proceeded to report her fictitious vehicle stolen and to notify her insurer accordingly. In fact, later on the very Saturday night she reported "her BMW" stolen in Kittery, Tierney drove back to Hull, Massachusetts, and stayed at Lawrence's residence for the rest of the weekend. On Monday morning she used Lawrence's telephone to call her insurer in Camden to report the purported theft. A day later, Lawrence similarly reported the theft of "her BMW." Tierney also testified that she used Lawrence's telephone to call her insurer at least one additional time pending settlement of her claim. Tierney and Lawrence's course of conduct demonstrates more than mere knowledge of, or acquiescence in, the other woman's criminal enterprise. *Compare, e. g., Jones v. United States,* 365 F.2d 87 (10th Cir. 1966) (conspiracy conviction reversed), *with United States v. Bastone,* 526 F.2d 971 (7th Cir. 1975), *cert. denied* 426 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976) (conspiracy conviction affirmed). *Cf. Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (evidence showed no connection among several "spokes" who had individually committed similar crimes with a common "hub"). In the present case, the jury could reasonably have inferred from the proven acts of *affirmative cooperation* that, at least after the mid-July conversation, Tierney, Lawrence, and Risio had agreed to commit acts in furtherance of a single criminal enterprise consisting in its overall design of two separate crimes of theft by deception which, individually and in combination, were intended to yield in excess of $5,000. *See, e. g., United States v. Goble,* 512 F.2d 458 (6th Cir. 1975), *cert. denied* 423 U.S. 914, 96 S.Ct. 220, 46 L.Ed.2d 143 (1975); *United States v. Perez,* 489 F.2d 51, 59–64 (5th Cir. 1973), *cert. denied* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). There was no variance between the indictment and the proof.

### III. *Jury Charge on Conspiracy*

Defendant Sandra Lawrence alone presses the additional argument that the trial court erroneously instructed the jury regarding the necessity of proving her agreement with Tierney to accomplish "the same objective." We discern no such error.

As part of the court's principal charge, it read to the jury the material portions of section 151 setting forth the elements of conspiracy. At the close of the charge, Lawrence's counsel specifically ob-

jected to certain portions on the ground that according to the court's statement of the law, the jury could find Lawrence guilty of an overall conspiracy if she merely *knew* of the Tierney and Risio agreement but did not take any actions in furtherance of the objective of that agreement. The court then gave the following corrective instruction:

> "I believe I said to you, Ladies and Gentlemen, that if Sandra Lawrence was aware of a conspiracy to defraud the insurance company that took place between Risio and Tierney, assuming of course that there is evidence of such a conspiracy, that she would be guilty of the overall conspiracy. *She would not be guilty if all she did was know about it unless she took some act that was part of the overall conspiracy.* In other words, if she, herself, entered into a subsequent or current conspiracy to do the same thing with another vehicle with Charles Risio, and she knew of the existence of a conspiracy between the Tierney girl and Charles Risio, then she would be guilty of conspiracy for both of the vehicles." (Emphasis added)

Counsel again objected to the charge but without then specifying any basis for the objection. Since counsel did not "stat[e] distinctly the matter to which he object[ed]" nor "the grounds of his objection," we take cognizance of any error in the charge only under the manifest error standard. See Rules 30(b), 52(b), M.R.Crim.P. ■ The court's instructions directed the jury that it could find Lawrence guilty of a single overall conspiracy only if she had taken some substantial step in furtherance of a common design. Whether a common plan actually existed and, if so, what its contours were, were questions of fact properly entrusted to the jury's determination. The instructions as a whole impressed upon the jury that in order to find Lawrence guilty as charged it had to find both that Lawrence had agreed with Risio and Tierney to effect an overall conspiracy, *see* 17-A M.R.S.A. § 151(1), and, if such a conspiracy existed, that Lawrence had taken a substantial step to effect that common end.

## IV. Testimony of Sandra Hamlet

At trial the State called as a witness Sandra Hamlet, the East Coast District Manager of BMW of North America, Inc. She testified that a BMW bearing an identification number commencing with the prefix "210" or "219"[10] would not have been manufactured by BMW for import to destinations east of the Mississippi in the United States. Hamlet's testimony buttressed the State's proof that neither Tierney nor Lawrence in fact owned the BMW that she insured and later claimed to have been stolen.

■ Although the trial court never expressly ruled that Hamlet was an expert witness, it was on that basis that the court permitted her to testify to BMW's vehicle identification code and recordkeeping practices. *See* Rule 702, M.R.Evid. Defendants at no time objected to her expert status but repeatedly moved to strike portions of her testimony for lack of adequate foundation. In view of Hamlet's evident expert qualifications, the trial court did not err in permitting her to testify to those matters as to which, by virtue of her expertise, she possessed the requisite personal knowledge.

## V. Prosecutorial Misconduct

■ Defendants finally point to assorted instances of alleged prosecutorial misconduct which, they allege, deprived them of a fair trial. Having carefully considered the instances of alleged abuse in the context of the entire record, both in individual isolation and in the aggregate, we are satisfied that defendants received the fair trial to which by law they are entitled. *See, e. g., State v. Kilton,* Me., 387 A.2d 210 (1978).

The entry must be:

Appeals denied.

Judgments affirmed.

---

10. The BMWs insured by Tierney and Lawrence bore vehicle identification numbers 2191081 and 2103112, respectively.

GODFREY and NICHOLS, JJ., did not sit.

POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ., concurring.