**Stanley NYZIO, Barbara E. Nyzio, Joshua M. Clark and Geraldine R. Clark**

v.

**Herbert VAILLANCOURT.**

Supreme Judicial Court of Maine.

Feb. 10, 1978.

---

Freme & McElwee, by Ferris A. Freme (orally), Caribou, for plaintiffs.

William J. Smith (orally), Van Burden, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

On January 9, 1975 plaintiffs Stanley Nyzio, Barbara E. Nyzio, Joshua M. Clark and Geraldine R. Clark commenced a civil action in the Superior Court (Aroostook County) against defendant Herbert Vaillancourt. The complaint alleged that plaintiffs owned a 48 acre parcel of land situated in Limestone and Caswell, Maine, and that during February and March 1974 defendant unlawfully entered their land and cut down trees thereon worth, as timber, $8,410.87. Further alleging that defendant had acted "knowingly" or "willfully", plaintiffs claimed double the amount of the actual damages, as provided in 14 M.R.S.A. § 7552.[1]

The case was tried before a jury in October 1976. Defendant was found liable to plaintiffs. By special findings the jury fixed compensatory damages at $6,000.00 and determined that defendant had engaged in his unlawful conduct "willfully or knowingly." The jury therefore doubled the amount of actual damages and awarded plaintiffs total damages of $12,000.00.

After judgment was entered on the verdict of the jury defendant filed a timely motion for a new trial. Defendant claimed not only that reversible errors were com-

---

1. The statute reads:

"Whoever cuts down, destroys, injures or carries away any ornamental or fruit tree, timber, wood, underwood, stones, gravel, ore, goods or property of any kind from land not his own, without license of the owner, or injures or throws down any fences, bars or gates, or leaves such gates open, or breaks glass in any building is liable in damages to the owner in a civil action. If said acts are committed willfully or knowingly, the defendant is liable to the owner in double damages."

mitted during the course of the trial but also that the jury had awarded excessive damages. The presiding Justice concluded that there was merit in defendant's contention as to excessive damages. Accordingly, pursuant to the directive in Rule 59(a) M.R. Civ.P., the presiding Justice utilized the mechanism of remittitur. He ordered a new trial on the issue of damages unless "within 30 days . . . [plaintiffs] remit all of the verdict in excess of $5,000.00." By an appropriate entry of record plaintiffs assented to the remittitur ordered and thereby committed themselves to accept damages of $5,000.00.

Defendant, however, was dissatisfied with the presiding Justice's disposition of his motion for a new trial. He appealed from the judgment entered on the verdict of the jury. Thereby, as provided in Rule 73(a) M.R.Civ.P., defendant preserved for appellate review his claim of error in the disposition of his motion for a new trial notwithstanding that this was an error occurring after the entry of judgment on the verdict.

### 1.

Finding no basis for reversal in any of defendant's claims as to errors committed during the course of the trial, we comment more extensively about one of them.

The plaintiffs called as a witness Delbert Rossignol. For more than thirty years Rossignol owned and lived on land adjoining that of plaintiffs. He testified that he saw trees being cut on plaintiffs' land. Counsel for plaintiffs then asked him whether he had seen that at approximately the same time trees were also being cut on his own land. Over defendant's objection that this was irrelevant matter, the presiding Justice allowed Rossignol to testify that he had seen employees of the defendant cutting trees on his land, without having permission to cut, at about the same time he had seen them cutting trees on the land of plaintiffs.

Counsel for plaintiffs thereupon resumed further questioning of Rossignol as follows:

"Q —Did you ever approach him [defendant] about being paid for the property cut on your land?

"A —Yes, I did.

"Q —What did he say to you?

"A —He told me to go to hell."

Counsel for defendant again objected, claiming that the matter was "not relevant and extremely prejudicial." Counsel for defendant also moved for a mistrial on the ground that Rossignol's testimony as to defendant's cutting on Rossignol's land and defendant's "willfulness regarding Mr. Rossignol . . . has no bearing on the present case, and is extremely prejudicial." The presiding Justice denied a mistrial and allowed Rossignol's testimony to remain in evidence.

■ We disagree with defendant's contention that in the circumstances here involved defendant's conduct toward Rossignol was irrelevant to plaintiffs' case against defendant. As defendant himself recognized in asking for a mistrial, this evidence did indicate an attitude of "willfulness" by defendant towards Rossignol. That defendant had thus manifested "willfulness" towards Rossignol could bear, in the circumstances here indicated, on willfulness by defendant towards plaintiffs. The evidence could support a jury conclusion that the complaints of Rossignol and plaintiffs against defendant were interrelated by virtue of the approximately contemporaneous timing, and the similarity of the manner, of the cutting of trees on Rossignol's and plaintiffs' land. Because of this interrelationship the jury would have warrant to treat willfulness of defendant towards Rossignol as having carry-over force to indicate that defendant's attitude toward plaintiffs was similar.

■ The ultimate question, then, is whether Rossignol's testimony, though relevant, should nevertheless have been excluded because its potential to produce unfair prejudice heavily outweighed its probative value. (Rule 403 M.R.Evid.) This determination involves a balancing process in which the presiding Justice is allowed a large discretion. See *Cope v. Sevigny,* Me., 289 A.2d 682, 689 (1972); Field and Murray, *Maine*

*Evidence,* Advisers' Note to Rule 403, at 59 (1976). We find no abuse of discretion, here, by the presiding Justice.[2]

*2.*

On the issue of excessive damages, the foundation of analysis is that the law allows plaintiffs a choice as to the measure of damages.

"The measure of damages for the destruction of trees allows the land owner an election. When the trees have an intrinsic, estimable value other than that which their presence adds to the value of the real estate, 'the owner may treat them as personal property, and sue for their value as though they had been detached from the realty, in which case his measure of damages is the value of the trees separate and apart from the soil; but where one sues to recover damages for injury, permanent in nature, caused his land by the loss of the trees, the measure of damages is (the difference between) the market value of the land immediately before and immediately after the injury." *Boucher v. Paradis,* Me., 244 A.2d 69, 70–71 (1968) quoting from *Pettengill v. Turo,* 159 Me. 350, 358, 193 A.2d 367, 373 (1963).

Here, as made clear in their complaint, plaintiffs elected to claim damages for the value of the trees as personalty detached from the realty. With this the controlling measure of damages, the only evidence on damages was the testimony of plaintiff Joshua Clark stating his opinion that the cut trees were worth, as timber, $2,500.00.

The evidence thus warranted a maximum award of $2,500.00 as compensatory damages.

In the ordering of a remittitur pursuant to the directive of Rule 59(a) M.R. Civ.P., the presiding Justice must not purport to act as a fact-finder and substitute his judgment for that of the jury as to the amount of damages which is proper. Rather, the function of the remittitur is to remove the unlawful excess in the jury's award, that is, the amount which, in light of all the evidence, is in excess of the bounds of rationality and is, therefore, erroneous *as a matter of law.* See *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935); *Florida East Coast Ry. Co. v. Hayes,* 67 Fla. 101, 109, 64 So. 504, 506 (1914). Under this view of the function of a remittitur, the Court reduces the jury's award of damages to that amount which is the "maximum permissible" as a rational jury determination. See *Levasseur v. Field,* Me., 332 A.2d 765, 770 (1975); *Dunton v. Hines,* 267 F. 452, 455 (D.Me.1920); cf. *DeBlois v. Dunkling,* 145 Me. 197, 74 A.2d 221 (1950).[3]

A fundamental limitation of the Court's authority to use the remittitur is that when passion or prejudice are seen as influencing the jury's verdict, a new trial may not be granted on damages alone and, therefore, the use of the remittitur becomes derivatively improper. See Field, McKusick & Wroth, *Maine Civil Practice* § 59.2, Commentary.

**2.** At the time the presiding Justice was asked to declare a mistrial, the indication of the testimony of Rossignol was that defendant had told him to "go to hell" soon after Rossignol, having seen defendant's employees wrongfully cutting on Rossignol's land, had complained to defendant and asked defendant to pay for the damage. Later in the course of the trial, defendant called Rossignol as a witness and Rossignol then explained that when he had asked defendant to pay for the damage to his land defendant at first responded that he would be willing to pay for the wood. It was later, after Rossignol had stated to defendant that he had scaled the wood and asked defendant to pay $3,000.00 as damages, that defendant told Rossignol to "go to hell." All of this additional evidence was

presented to the jury. Plainly, Rossignol's explanation would tend to ameliorate the impact of Rossignol's prior testimony, absent explanation, to suggest an attitude of "willfulness" by defendant.

**3.** Although some courts adopt a different rule, we think that the position we have taken is ". . . the only theory which has any reasonable claim of being consistent with" the constitutional guaranty of trial by jury. *Gorsalitz v. Olin Mathieson Chemical Corporation,* 429 F.2d 1033, 1046, 1047 (5th Cir. 1970) quoting from 3 Barron & Holtzoff, *Federal Practice & Procedure* (Wright ed.) § 1305.1, at 376.

Here, we are satisfied that the presiding Justice was correct in resorting to the remittitur. The jury's award of $6,000.00 as compensatory damages was not by itself a sufficient indication of the influence of passion or prejudice. The record shows that the jury might have made a good faith mistake. The testimony of plaintiff Clark dealt with both the value of the trees as timber severed from the land and the value of the land before the trees were cut. Clark fixed this *land* value at $6,000.00. It appears that the jury, overlooking that plaintiffs had elected to recover for the value of the trees as timber severed from the land, mistakenly used the $6,000.00 land value as the measure of plaintiffs' damages.

We see nothing else in the record to indicate that the presiding Justice committed error in concluding that the jury's verdict was free of the influence of passion or prejudice and, therefore, a remittitur should be ordered.[4] In this regard, we stress that since the presiding Justice had personally observed the course of the trial, we accord great weight to his belief, evidenced by his use of the remittitur, that the jury's verdict was untainted by passion or prejudice.

Since the special finding of the jury was that defendant's unlawful conduct was committed "willfully or knowingly", we interpret the remittitur order as manifesting the presiding Justice's acceptance of the jury's conclusion that actual compensatory damages must be doubled. On this premise, we attribute to the presiding Justice a finding that the "maximum permissible" amount of compensatory damage was $2,500.00, the doubling of which produced the $5,000.00 amount specified by the order for remittitur as the "maximum permissible" total damages plaintiffs were legally entitled to recover.

This was a correct evaluation by the presiding Justice. Plaintiff Clark testified that the value of the trees as timber separated from the land was $2,500.00, and this was sufficient evidence to support an award of as much as, but no more than, $2,500.00 as a rational jury award of compensatory damages. As an owner of the property, Clark was competent to testify with respect to the value of his real or personal property, and such testimony can be by itself sufficient to support an award of damages. *Simmons v. State,* Me., 234 A.2d 330 (1967). *Simmons* clarified that:

"Any objection raised by the adverse party as to owner's actual familiarity with the particular property 'goes to the weight of the evidence, not to its admissibility' . . . ." (234 A.2d at 332)

*Simmons* also indicated, however, by citing *United States v. Sowards,* 370 F.2d 87 (10th Cir. 1966), that particular circumstances may be adduced which so undermine the weight to be assigned an owner's opinion of the value of his property that it cannot be sufficient, standing alone, to support a verdict. Defendant says that such is the situation here. We disagree. While the evidence suggests that plaintiff Clark's opinion of value was not based on a personal measurement of the area where the cutting had occurred, it also indicates that Clark had viewed the land before and after the cutting. Moreover, Clark's opinion as an owner is here enhanced by his twenty years of experience in cutting logs and his ownership of woodlands in other areas. Clark could thus be found to possess the "specialized knowledge" or experience necessary to qualify as an expert with respect to the value of woodlots and the trees therein. See Rule 702 M.R.Evid. This being so, that Clark arrived at his opinion of value by relying in part on a survey by Prentice and Carlisle did not vitiate Clark's opinion as evidence. Even though the Prentice and Carlisle survey itself was not admissible in evidence (because it was hear-

---

4. Defendant argues that prejudice resulted from an unresponsive answer given by plaintiff Clark that he had paid Prentice and Carlisle $600.00 for their survey of the area cut, as well as from allegedly erroneous statements made by plaintiff's attorney during closing argument. However, cautionary instructions on these points by the presiding Justice were sufficient to prevent the jury from being influenced by passion or prejudice.

say), Clark could be found to be an expert and could make use of it to assist him in reaching an opinion. Rule 705 M.R.Evid.

Defendant contends that the presiding Justice wrongly instructed the jury on the meaning of "knowingly" as one of the criteria used in 14 M.R.S.A. § 7552 to warrant a recovery of double the amount of the compensatory damages to which plaintiffs are found entitled.[5]

■ Defendant did not purport to make this claim of error to the presiding Justice when the instruction was given and defendant acknowledges that, therefore, it was not preserved for appellate cognizance in ordinary course. (Rule 51 M.R.Civ.P.) Defendant however, invokes the exception recognized by this Court that a party asking for a new trial may be granted it, notwithstanding his procedural default in having failed to object to a claimed erroneous instruction,

". . . if the error has deprived the party of a fair trial and has resulted in injustice." *Wescott v. Vickerson,* Me., 284 A.2d 902, 904 (1971)

See *Hixon v. Mathieu,* Me., 377 A.2d 112, 115, 116 (1977); cf. *Johnson v. Parsons,* 153 Me. 103, 135 A.2d 273 (1957).

■ Although defendant's claim on appeal is correct that it was error for the presiding Justice to charge the jury, in effect, that "actual notice" is legally identical with "actual knowledge", see *Avco Delta Financial Corporation of Maine v. Town of Whitefield,* Me., 295 A.2d 921, 926 (1972); cf. *State v. Beale,* Me., 299 A.2d 921 (1973), this error did not deprive defendant of a fair trial on the double damages issue.

"Actual notice" and "actual knowledge", though technically different as theoretical concepts, have a close practical relationship. Cf. *Morey v. Milliken,* 86 Me. 464, 30 A. 102 (1894). Even where, as here, policy considerations require that the theoretical distinction between the concepts not be ignored or treated as one of semantics, circumstances constituting "actual notice" can constitute proof of "actual knowledge." See *State v. Beale,* supra, at 924, 925.

Furthermore, the jury's award of double damages is here entirely supportable on the basis of the "willfully" concept prescribed by 14 M.R.S.A. § 7552 as an alternative to "knowingly." The presiding Justice correctly explained "willful" conduct as

"conduct . . . which displays an utter and complete indifference to and disregard for the rights of the other."

See *Blaisdell v. Daigle,* 155 Me. 1, 2, 149 A.2d 904 (1959). In accordance with this definition, the evidence warranted a jury finding that defendant's unlawful conduct toward plaintiffs was "willful." Thus, conceded that the incorrect instruction as to "knowingly" could be prejudicial to defendant, in that the erroneous instruction might have made it a little easier than a correct instruction for the jury to find double damages by use of the "knowingly" criterion,[6] even this small potential for prejudice was significantly ameliorated. Since "willfulness" provides a legally correct justification for the jury's verdict that damages be doubled and "willfully" is a criterion imputing a lower degree of culpability than "knowingly", the jury may fairly be taken as more likely to have utilized "willfully" as

---

5. The instruction now complained of was as follows:

"I instruct you that knowingly requires actual knowledge of wrong doing at the time of the act. Again, it requires actual knowledge of wrong doing at the time of the act. Our Law Court in that regard has said if a party has knowledge of such facts as would lead a fair and prudent man using ordinary cautions to make further inquiries and he avoids the inquiries, he is chargeable with notice of the facts which by ordinary diligence, he would have ascertained. He has no right to shut his eyes against the light before him. He does a wrong

not to heed the signs and signals seen by him. It may be well to conclude that he is avoiding notice of that which he really believes or knows. Actual notice of the facts which to the mind of a prudent man indicate notice is proof of notice. . . . Willfully, as used in this statute, is intended to embrace conduct on the part of the Defendant which displays an utter and complete indifference to and disregard for the rights of the other."

6. There was evidence sufficient to support a jury verdict of double damages on the basis of a correct instruction as to the meaning of "knowingly."

the basis for its verdict than the higher culpability criterion of "knowingly."

In sum, the presiding Justice's error in explaining "knowingly" was not so serious, either in the nature of the error made or in the magnitude of its impact, as to have made defendant's trial unfair regarding the issue of double damages.[7]

■ The presiding Justice correctly decided that a new trial on damages should be denied if plaintiffs would remit all of the amount awarded by the jury in excess of $5,000.00—double the amount of the maximum compensatory damages rationally supported by the evidence. By filing on record their assent to such remittitur, plaintiffs effectively removed the condition attached to the presiding Justice's denial of a new trial and, in consequence, the Justice's decision became an absolute denial of a new trial on the issue of damages.

■ Under Rule 73(a) M.R.Civ.P., by appealing from the judgment entered on the verdict, defendant correctly preserved his claim of error in the presiding Justice's ruling denying his motion for a new trial. Yet, the posture of the case as actually before us encompasses events occurring after entry of the judgment appealed from which affected that judgment—specifically, the filing by plaintiffs of their assent to the remittitur ordered by the presiding Justice. Because of these subsequently occurring events, the error which defendant has preserved for review must be taken as an error claimed to exist in the judgment entered on the verdict *modified by plaintiffs' assent to the remittitur* to become a judgment for plaintiffs in the amount of $5,000.00. Defendant's attack upon the judgment as thus modified fails.

The entry is:

Appeal denied; the judgment as deemed modified to award damages to plaintiffs in the amount of $5,000.00 is affirmed; remanded to the Superior Court with directions that the Court order that the judgment entered for plaintiffs on the verdict of the jury be modified to award damages to plaintiffs in the total amount of $5,000.00, thus to reflect the modification effected by plaintiffs' assent to the order of remittitur.

DELAHANTY, J., did not sit.

---

7. This Court has previously made clear that the existence of error prejudicial to a party, even in instances where the error may be of constitutional dimension, is not necessarily sufficient by itself to render a trial unfair and thus to require a retrial. See *State v. Pomerleau,* Me., 363 A.2d 692, 698 (1976).