STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-230

J. DAVID HEALY and
MAUREEN HEALY
as co-Personal Representatives
of the Estate of JOAN HEALY,

Plaintiffs

v.

ORDERS ON PENDING
POST-JUDGMENT MOTIONS

YORK HOSPITAL and
ALAN HYMANSON, M.D.,

Defendants

DONALD L. GARBRECHT
LAW

SEP 15 2004

Maureen Healy and J. David Healy as personal representatives of the estate of Joan Healy brought a complaint against York Hospital and a cardiologist, Alan Hymanson, M.D., claiming negligence in the care and treatment of Joan Healy who arrived at the hospital on March 19, 1999 and died there on March 21, 1999.

A pre-litigation screening panel issued unanimous panel decrees finding that neither York Hospital nor Dr. Hymanson was negligent and that no acts or omissions complained of proximately caused the injury complained of. Despite those findings the plaintiffs, as is their option, pursued their claims. The case was tried to a jury, which determined by a vote of 8 to 1 that the hospital was not negligent. The jury, however, determined by a 6-3 vote that Dr. Hymanson was and awarded $2,846.00 for funeral expenses, $160,000.00 for the emotional distress of the family members and the loss of comfort, society and companionship suffered by Mr. Healy as the husband of Ms. Joan Healy. The jury also awarded $1,500,000.00 in damages for Joan Healy's conscious suffering. The $160,000.00 amount was reduced to $150,000.00 to reflect the statutory

cap that was in effect at the time of Ms. Healy's death. See 18-A M.R.S.A. §2-804(b). On June 25, 2004 a judgment was signed giving effect to the jury's verdict.

I.    BILL OF COSTS.

Both York Hospital and the plaintiffs have submitted bills of costs. The hospital and the plaintiffs have reached an agreement regarding the costs claimed by the hospital. No action by the Superior Court is necessary regarding the claim by the hospital. The plaintiffs' request for costs in the amount of $9,464.56 against Dr. Hymanson is approved.

II.   MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL AND MOTION TO STRIKE.

Dr. Hymanson has filed a motion for judgment as a matter of law pursuant to Rule 50, M.R.Civ.P., or in the alternative, for a new trial pursuant to Rule 59, M.R.Civ.P. It is first necessary to determine what evidence can be considered in ruling on these related motions. Dr. Hymanson has consistently argued that, despite the death of Ms. Healy from intracranial bleeding following the administration of a clot-breaking medication, he acted consistent with good medical practice and certainly was not negligent. While the jury verdict was for a very substantial amount the vigor, sincerity and consistency of the defense indicated that Dr. Hymanson genuinely believes that he did exactly what he should have done for Ms. Healy despite the fact that Ms. Healy was one of the rare individuals, for whom the drug was not contra-indicated, who suffered fatal bleeding. While she may have died he would argue that he was not even remotely negligent. In support of his motion his counsel submitted affidavits from distinguished cardiologists discussing medical guidelines for the interpretation of EKGs, sometimes referred to as ECGs, and submitted testimony from other cases. The facts contained in the affidavits of Drs. Kellett, Ryan and Antman would have been relevant to the jury in

assessing the claim of the plaintiffs that the ST elevations from the EKG for Ms. Healy were not of sufficient elevation to warrant the use of a clot-busting drug. Likewise, the jury could have considered testimony that Dr. Stark, the plaintiffs' expert, gave elsewhere. However, the propriety of the jury's verdict must be examined based on the evidence that is received not the additional evidence it could have received.

There was no particular reason to believe in advance of trial that the additional evidence that Drs. Kellett, Ryan and Antman would provide was needed. It is, however, too late to present this material. Therefore, the motion of the plaintiffs to strike is granted as to the affidavits of Drs. Kellett, Ryan and Antman, any new evidence submitted with the motion, the transcripts of prior testimony of Dr. Stark and any portions of Dr. Hymanson's memoranda that refer to the excluded submissions.

The evidence in this case suggests that Ms. Healy arrived at the hospital with clear symptoms that she was having a heart attack and could benefit from a clot-breaking drug. The question is whether that evidence was sufficiently conclusive to justify the administration of a medicine that is often beneficial but sometimes deadly. The actions of Dr. Hymanson must be evaluated in light of the fact that while decisions need not be made instantaneously, the decisions must be made with dispatch as an untreated heart attack could lead to death or significant permanent impairment while the benefits that frequently come from the use of a clot breaking agent would be lost.

It is not the role of the Court to announce what its findings would have been. Rather the question is whether the evidence could support the jury's determination. While there is significant evidence to the contrary, the plaintiffs did present the testimony of Robert M. Stark, M.D. His testimony, if believed, and apparently it was, is sufficient to support the verdict.

The Court has expressed its reservations outside the presence of the jury that the fine distinction of more than 1 mm of elevations rather than equal to or greater than 1 mm cannot be the test to determine whether a more often beneficial and even life saving, but sometimes fatal, drug is administered. It is not, however, my role to determine whether Dr. Stark was wrong. A sufficient majority of the jury has found negligence, there is evidence to support that finding and the finding of negligence stands.

It has been hinted at that, if the verdict is allowed to persist, doctors will be forced either to be too cautious or to be placed in an untenable position of being sued regardless of what they do if a less than desirable outcome occurs. The Court has more confidence in the medical community than that. Regardless of what the final outcome is in this case with unusual medical facts, doctors will presumably continue to gather evidence from symptoms, histories, observations and tests, consult with their patients when they can and apply their best skill and judgment.

## III. MOTION FOR REMITTITUR.

In the alternative the defendant Dr. Hymanson has moved to reduce the award of damages for Ms. Healy's conscious suffering. While there are several formulations of the standard to be used in ruling on such requests the words chosen by Justice Wernick in *Nyzio v. Vaillancourt*, 382 A.2d 856, 861 (Me. 1978) continue to provide excellent guidance.

> ". . . The presiding Justice must not purport to act as a fact-finder and substitute his judgment for that of the jury as to the amount of damages which is proper. Rather, the function of the remittitur is to remove the unlawful excess in the jury's award, that is, the amount which, in light of all the evidence, is in excess of the bounds of rationality and is, therefore erroneous as a matter of law... the Court reduces the jury's award of damages to the amount which is the 'maximum permissible' as a rational jury determination."

4

Stated differently the test is, see *Phillips v. Eastern Maine Medical Center*, 565 A.2d 306, 309 (Me. 1989).

"Although we will not substitute our judgment for that of the jury, we must examine the record to determine whether the jury's award exceeds the limit of evidentiary support."

The evidence does not precisely indicate the duration or severity of any conscious suffering of Ms. Healy. She unfortunately only lived about a day and a half after she received the clot-breaking medication and she gave little indication of precisely what she was or was not experiencing. While there was just enough evidence to present the claim of conscious suffering to the jury the evidence was sparse. Each case must be determined on its own facts based on the economic standards of its time. The sum of $1,500,000 exceeds the bounds of rationality and exceeds the limit of the evidentiary support. Any amount in excess of $150,000 similarly fails those tests.

The entries are:

Plaintiffs' bill of costs in the amount of $9,464.56 is approved.

Plaintiff's motion to strike is granted in part consistent with this order.

Defendant Hymanson's motion for judgment as a matter of law or for new trial is denied.

Defendant Hymanson's motion for remittitur is granted. A new trial is granted if plaintiffs decide not to remit $1,350,000.00 from the award for conscious suffering for Joan Healy. The plaintiffs shall inform the Clerk within twenty days of the date of this order whether they will accept the remittitur or opt for a new trial on all issues involving Dr. Hymanson.

Dated:        September 14, 2004

PLAINTIFF:  Mark Randall, Esq.
            THE MCARDLE LAW FIRM
            183 Middle St
            Portland Me 04101

FENDANT HYMANSON: Christopher Nyhan, Esq.
eti Flaherty Beliveau Pachios & Haley
            PO Box 9546
            Portland Me 04112-9546

Paul A. Fritzsche
Justice, Superior Court

DEFENDANT YORK HOSPITAL: Karen Frink Wolf, Esq.
        FRIEDMAN BABCOCK & GAYTHWAITE
        PO Box 4726
        Portland Me 04112-4726