STATE OF MAINE                                  SUPERIOR  COURT
PENOBSCOT, SS.                                  CIVIL ACTION
                                                DOCKET NO. RE-09-80
                                                WEA - PEN - 8/20/2011

BLAINE OLIVEIRA AND
JENNIFER OLIVEIRA,

         Plaintiffs,
              v.
PELL-MULL, LLC. and                             ORDER
QUEEN CITY REAL ESTATE and
INSURANCE AGENCY, INC.,

         Defendant.


         Following a two-day trial, the defendant has filed a Motion for Judgment as a

Matter of Law and a Motion for New Trial. Plaintiffs brought their complaint pursuant

to 14 M.R.S.A. § 7552, alleging that the defendants knowingly or negligently cut trees on

the plaintiff's property. Originally, Queen City Real estate was an additional defendant,

however, the Court granted its Motion for Judgment as a Matter of Law at the close of

the case. The jury retuned a verdict for plaintiffs in the amount of $10,000 and also

found that the cutting[1] was intentional or knowing and awarded treble damages,

causing the total award to be $30,000. In its Motion for Judgment as a Matter of Law, the

defendant asserts that there is insufficient evidence of liability against Pell-Mull, and in

the Motion for New Trial, the defendant asserts that there was insufficient evidence to

sustain the damages award.

         I.  Judgment as a Matter of Law

         At the close of the evidence in this case, the defendants renewed their motion for

judgment as a matter of law that had been made at the close of the plaintiff's case. The

---

[1] The Court will use the term "cut" in this Order to describe how the trees were taken, but by using that
term, does not indicate that in fact the trees were cut. Because the plaintiffs were unable to ascertain
whether the trees were cut with a chainsaw or extracted by an excavator, or felled in some other manner,
the Court will use "cut" generally to refer to any method by which the trees were toppled.

Court granted the motion with regard to defendant Queen City Real Estate, but denied it with regard to Pell-Mull LLC. Whenever this motion is denied at the close of all the evidence, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. M.R. Civ. P 50(b). The motion can be granted only, in viewing the evidence in the light most favorable to the plaintiff, when a jury could not reasonably find for the plaintiff on an issue that under the substantive law is an essential element of the claim. M.R. Civ. P. 50(a). If the motion is denied at the close of the plaintiff's case, the defendant can then present evidence, but doing so acts as a waiver of error in the denial of the earlier motion. *Davis v. Allen*, 255 A.2d 894 (Me. 1995). In viewing the facts developed during the entire trial in the light most favorable to plaintiff, one could conclude the following:

1. Pell-Mull LLC was formed to develop Brookfield Estates in Holden, Maine. Gregory Mullins, Scott Pelletier, and James Pelletier were its shareholders. Pell-Mull contracted with Pellscot LLC to install a road into the development and provide site-work services. Pellscot's lone shareholder was Scott Pelletier. Pell-Mull contracted with Queen City Real Estate, owned by Gregory Mullins, to sell the lots. The roadway to be installed is located next to the plaintiffs' residence.

2. A Queen City employee placed a sign for Brookfield Estates that included the names Pell-Mull, Inc. and Queen City Real Estate on the Oliveira's property, and subsequently moved it on to Pell-Mull's land after the code enforcement officer contacted Mr. Mullins.

3. In July of 2007, Ms. Oliveira was at home and heard activity and machinery from the direction of the right of way approximately 75' away, including approximately 50' of forest. She saw a tree go down and "could tell" people were over her property line "by instinct", called the code enforcement officer, and asked him to come to the

scene. Soon thereafter, she joined him at the right of way, where there was a discussion and a worker apologized. She did not know who the workers were or for whom they worked. She observed a few trees down, but was unable to see any stumps or holes from which a tree could have been excavated. She also did not observe any chainsaws or equipment used to topple trees.

4. Later, in November of 2007, the Oliveiras, a Maine Forest Service Ranger, Scott Pelletier, and Mr. Mullins met to discuss the Oliveiras' claim. Neither Mullins nor Pelletier admitted or denied any involvement in cutting trees. Mr. Mullins did not deny, or admit that he was part of the venture. Nothing was resolved and Mr. Mullins gave his Queen City business card to the Oliveiras.

5. Peter Thornton, a Pellscot employee, did much of the machine work in July of 2007 on the right of way close to the Oliveiras' residence. Ms. Oliveira and the code enforcement officer approached him on the day in question as he was installing under-drainage immediately beside the roadway that had been built, but not paved, during the fall of 2006. He testified that he was working only in an area immediately next to what was to be paved, that the open ditching extending toward the Oliveira's property had already been completed and seeded, and that he cut no trees. He testified that there was initial confusion on that day concerning the location of the right of way because the code enforcement officer said its width was 50' wide from a known pin. If that were true, a portion of what they had constructed was situated on the Oliveiras' property. They stopped work and had a surveyor come to the scene whereupon it was discovered that the right of way was 75' wide, and was located where Mr. Thornton had originally thought it was located. He indicated that he had apologized because of the original misunderstanding.

Based on these facts, a rational fact finder could conclude that Mr. Thornton or members of his crew caused plaintiffs' trees to be cut. That fact finder could accept Ms. Oliveira's testimony that she saw a tree fall and other trees on the ground and not consider the absence of stumps, holes, or the means to cut or topple the trees, to be fatal to the proposition. That fact finder could also reject Mr. Thornton's testimony concerning the reasons for the apology.[2] In reviewing these facts, however, it is clear that there is no evidence supporting a finding that Pell-Mull LLC was directly responsible for removing any trees on the plaintiff's property, having contracted the job to Pellscot. It has been argued, however, that principles of agency[3] cause Pell-Mull to be liable for the taking of plaintiffs' trees.

An agent is a person who is authorized to do certain acts for the principal, on the principal's behalf, or for the principal's benefit, and the principal is bound by the acts of the agent done within the scope of authority granted by the principal. *See Page v. Boone's Transp.*, 1998 ME 105, ¶ 5, 710 A.2d 256. 257. In this case there is no evidence that Pell-Mull authorized Pellscot to cut trees from the property of the Oliveiras, so there is no direct agency liability. The analysis does not end here, however, because a principal may be held responsible for the acts of an agent that were committed outside the scope of the agent's original authority in certain situations.

The principal, Pell-Mell, could be held responsible under these circumstances if the plaintiff proves (1) that the principal learned of the acts of the agent and ratified

---

[2] Additionally, Pl.'s Ex. #10, the Forest Service complaint report was admitted without objection, although its admissibility is doubtful. The report is captioned as a "complaint" and could properly be accepted as describing the plaintiff's complaint, if admissible for that purpose. The report is somewhat ambiguous and goes on to include what may be a conclusion of the ranger that saplings were accidentally cut. This may have some probative value on that point.

[3] The plaintiff did not request an instruction concerning the liability of a property owner for the trespass of an independent contractor as described in *Bonk v. Mcpherson*, 605 A.2d 74, 79 (Me. 1992). Although plaintiff referred to the concept of joint venture in arguing liability, no case law was offered, nor was any found, that announced separate liability rules, apart from concepts of agency, for joint enterprises or joint ventures.

those acts by approving of the acts or by accepting the benefits of those acts, or (2) that Pell-Mull's conduct lead the Oliveiras to believe that Pellscot was its agent by knowingly or negligently holding out Pellscot as possessing authority to act for it. *QAD Investors, Inc. v. Kelley,* 2001 ME 116, ¶¶ 19, 21, 776 A.2d 1244, 1250. Plaintiff cannot avail itself of the latter argument (apparent authority) because there is absolutely no evidence that Pell-Mull said or did anything to cause the Oliveiras, to believe that Pellscot was Pell-Mull's agent. In fact, neither of the Oliveiras knew who was working on the right of way. Although plaintiffs have argued that the placement of the Brookfield Estates sign was significant on the issue of liability, it does not mention Pellscot in any way and could not be interpreted as being relevant to Pellscot's apparent authority status.

Finally, did Pell-Mull somehow ratify the removal of trees from the plaintiffs' land? Plaintiffs have argued that ratification can be found in the November meeting arranged by the forest ranger, and that somehow Pell-Mull's conduct through Scott Pelletier and Greg Mullins could be construed as approving of the taking of plaintiff's trees. Plaintiffs argue that because the two Pell-Mull owners attended the meeting and did not deny responsibility for the tree cutting, they somehow approved of the taking. In fact, although they did not deny responsibility, all agree they did not admit to being responsible, either, even though the meeting was called to discuss the Oliveiras' complaint. Nothing occurred at the meeting that resolved the complaint and Mr. Mullins provided the plaintiffs with his Queen City business card. This Court does not agree that this conduct could be construed as demonstrating approval for the taking or cutting of the plaintiff's trees. In fact, the conduct has nothing to do with expressing Pell-Mull's approval of the act and is even neutral as an expression of responsibility, let alone approval. Whether one could reasonable find that Pell-Mull was conferred a

benefit as a result of the removal of the trees is a closer question. There was no evidence offered from which one could conclude that the trees that were cut had any value or were sold, let alone that Pell-Mull received any benefit. It was argued by plaintiffs' counsel and supported by testimony and photographic evidence, including Pl.'s Ex. #4, that it may have been necessary to make an incursion into the Oliveira's property in order to properly grade the raised roadbed. It could also possibly be concluded that if a tree were in the way, it would have been removed, the hole filled, and the area graded and seeded. Indeed, there were obvious locations where loam, seed, and hay had been placed over the property line and onto the plaintiffs' property. Although this is not compelling evidence of tree removal, a rational fact finder could make the conclusion.

Based on the foregoing, this Court finds that, viewing the verdict in the light most favorable to the plaintiff, this verdict can be sustained. Motion for judgment as a matter of law DENIED.

## II. Motion for New Trial or to Alter of Amend the Judgment

In this motion the defendant argues that evidence of damages was insufficient to sustain the verdict and that the jury was allowed to consider a measure of damages that was not raised in the pleadings.

At trial, two different approaches were taken to establish damages. First Ms. Oliveira testified, in response to her counsel's question concerning what she was prepared to pay to replace the trees that were cut, that she was prepared to pay $8,800. Defense counsel failed to object, but developed on cross examination that this sum was based on the estimate of a nursery for the planting of 32 trees, that, in viewing the evidence in the light most favorable to the plaintiffs, was based on a representative's visit to the site. The plaintiff unsuccessfully attempted to have the estimate admitted

into evidence. [4] Additionally, when regeneration damages are claimed, the plaintiff is entitled to recover forfeiture amounts determined by 17 M.R.S.A. §2510. *See* 14 M.R.S.A. § 7552. Mr. Oliveira spent considerable time during his testimony estimating the number and size of the trees that were cut and computing a forfeiture amount of $796.00.[5]

As an alternative to adding regeneration cost to statutory forfeiture amounts to arrive at a proper measure of damages, a plaintiff can recover the diminution in value of real estate as a whole resulting from the violation. *See* 14 M.R.S.A. § 7552(3)(A). After plaintiff was unable to have the nursery estimate admitted, and left with testimony of only $796.00 in damages, counsel asked Mr. Oliveira to estimate the value of their real estate and he testified, "about $200,000." Next, Counsel asked by what percentage was that value diminished by the taking of the trees and Mr. Oliveira responded, "maybe 5%." Even though plaintiff was obviously shifting gears to elicit testimony concerning a totally different theory of damages, defense counsel failed to object and assert as a reason that the new damages theory was not contained in the pleadings. He also failed to object to Mr. Oliveira's testimony because of lack of qualifications or foundation to issue such an opinion, or the speculative nature of the opinion.

The defendant moves for a new trial because of the changed theory of damages upon which plaintiffs presented evidence at trial, yet failed to object at the time. If timely objection had been made the Court could have explored with both parties the

---

[4] Plaintiff's counsel withdrew his request for admission of the exhibit after a discussion with the Court concerning whether the estimate reflected proper regeneration damages as outlined in 14 M.R.S.A. § 7552(3)(B). Hearsay could have been mentioned as well as a reason for its exclusion.

[5] He counted and measured the trees in a 220" x 6 ½' nearby plot and computed the statutory forfeiture amounts for those trees. He decided that the area from which trees had been cut was 35% of the total area of the plot and applied 35% to the total forfeiture amount to arrive at the forfeiture amount for trees he believed had been cut. There was no objection to this testimony.

merits of the objection and potential prejudice to the defendants. The Court considers this failure to object as the defendant's implied acquiescence in proceeding at trial with both theories of damages presented, and concludes that it is now too late to register the objection that should have been made at trial.

A different argument can be made with regard to the sufficiency of the damages testimony to sustain the verdict that was rendered. On a motion for new trial on the ground that the jury verdict was excessive, the defendant must show that the jury acted under some bias, prejudice or improper influence, or has made some mistake of fact or law. *Pelletier v. Fort Kent Golf Club*, 662 A.2d 220, 224 (Me. 1995). Neither a complete new trial nor a partial new trial on the issue of damages can be ordered until the plaintiff has been given a chance to remit the excess. *See, e.g., C.N. Brown Co. V. Gillen*, 569 A.2d 1206, 1209 (Me. 1990). The function of remittitur, or remitting the excess, is not to substitute the court for the jury as fact finder, but to remove that part of the jury's verdict that is excessive as a matter of law, and the amount should be reduced to the highest amount that the jury could properly have awarded. *Nyzio v. Vaillancourt*, 382 A.2d 856, 862 (Me. 1978).

At the close of the trial, the plaintiff abandoned any damages argument based on regeneration cost plus forfeiture amount and did not ask for an instruction on this measure of damages. The sufficiency question then becomes, is the opinion testimony concerning loss of real estate value so lacking in probative value that it could not be a legitimate basis for the jury's damages award? In the absence of an objection, the testimony was admitted and it could be argued validly that the jury was entitled to rely on the opinion of a 5% diminution in value. Authority for the admissibility of this owner's opinion can be found in *Ferrell v. Cox*, 617 A.2d 1003,1007 (Me. 1992), in which testimony of an owner of real estate that his property diminished in value by $200,000

to $250,000 because of the defendant's actions was ruled to be sufficient evidence of those damages, in the absence of conclusively contradictory evidence. The problem with applying this concept here is that Mr. Oliveira did not say "5%", or "approximately 5%", but he said, "maybe 5%." Mr. Oliveira's use of the word "maybe", which means "perhaps", or "possibly", *The American Heritage Dictionary (2d. College Ed. 1985)*, requires the jury to speculate in reaching a decision on the damages issue. Additionally, no evidence was offered explaining or supporting the opinion. No facts were provided in support of the opinion, and it is clear that Mr. Oliveira did not know the number of trees cut, their size, species, or degree of fullness. Adding to the speculative nature of the testimony is the utter lack of any explanation concerning the method or process that Mr. Oliveira used to reach the conclusion, or his background or experience in rendering such opinions.[6]

Damages may not be awarded when the proof is speculative. When the damages evidence is in the nature of mere surmise and conjecture, the fact-finder will be unable to determine the plaintiff's loss with reasonable certainty. *Snow v. Villaci*, 2000 ME 127, ¶ 13, 754 A.2d 360, 364-65. This Court finds that under the unique circumstances of this case, the damages award cannot be sustained by damages evidence that, virtually in its entirety, consists of "maybe 5%."

Since this Court's responsibility is to first establish an amount for remittitur purposes in lieu of ordering a new trial, the only amount that can be sustained by the evidence is $796, yielding treble damages of $2,388. If that amount is not satisfactory to plaintiff, who shall so indicate within 10 days, a new trial will be ordered.

---

[6] It is not surprising that little in the way of information concerning this opinion was developed at trial, by either side. This theory of damages was not contained in the pleadings, was not mentioned in opening, and plaintiff only pursued diminished property value as a measure of damages after earlier, substantial attempts at developing the statutory forfeiture/regeneration costs approach to damages collapsed during the trial.

The Clerk is directed to incorporate this Order into the docket by reference.

Dated: August 10, 2011

WILLIAM ANDERSON
JUSTICE, SUPERIOR COURT